# EXHIBIT

# A

IN THE SUPERIOR COURT OF HABERSHAM COUNTY
STATE OF GEORGIA

ANGELA and JAMES FISCHER,
Individually and as the Guardians of
MOLLIANNE FISCHER, an Adult
Ward,

      Plaintiffs,

v.

    GEORGIA DEPARTMENT OF
CORRECTIONS,
    BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA for GEORGIA
CORRECTIONAL HEALTHCARE,
a division of AUGUSTA
UNIVERSITY,
    COMMISSIONER BRIAN
OWENS, in his individual capacity as
the former Commissioner of the
Georgia Department of Corrections,
    DR. BILLY NICHOLS, in his
individual capacity as Medical
Director of Georgia Correctional
Healthcare,
    DR. EDWARD BAILEY, in his
individual capacity as the former
Director of Georgia Correctional
Healthcare,
    DR. SHARON LEWIS, in her
individual capacity as the Medical
Director for the Georgia Department
of Corrections,
    KATHY SEABOLT, in her
individual capacity as the former
Warden of Arrendale State Prison,
    ANGELA GRANT, in her
individual capacity as the Warden of
Pulaski State Prison,

JURY TRIAL DEMANDED

CIVIL ACTION
FILE NO. _2016CV0263 CC_

DR. YVON NAZAIRE, in his individual capacity as the former Medical Director at Pulaski State Prison,

BETTY RODGERS, in her individual capacity as the Health Services Administrator at Pulaski State Prison,

DANNY FINN, in his individual capacity as the Director of Human Resources for Georgia Correctional Healthcare,

ALABA ADESHIGBIN, in her individual capacity as a Nurse at Arrendale State Prison,

DANIEL WEISE, in his individual capacity as a Nurse at Arrendale State Prison,

ELIZABETH GEE, in her individual capacity as a Correctional Officer at Arrendale State Prison,

HANNAH FULLER, in her individual capacity as a Nurse at Arrendale State Prison,

NURSE PAGE, in her individual capacity as a Nurse at Arrendale State Prison,

AMBER STONE, in her individual capacity as a Counselor at Arrendale State Prison,

KARLA SUE KIEFER, in her individual capacity as a Nurse at Arrendale State Prison,

KRISTI ADDISON, in her individual capacity as a Nurse at Arrendale State Prison,

YHANA WHITWORTH, in her individual capacity as a Nurse at Arrendale State Prison,

RHONDA STOVALL, in her individual capacity as a Nurse at Arrendale State Prison,

PATRICK ARNOLD, in his

individual capacity as a Correctional
Officer at Arrendale State Prison,

   CHELSEA GOSS, in her individual
capacity as a Correctional Officer at
Arrendale State Prison,

   JUSTIN GRIZZLE, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,

   WAYMAN JACKSON, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,

   STEVEN LEWICKI, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,

   ROBERT PRATHER, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,

   MICHAEL ROBINSON, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,

   CRYSTAL TYLER, in her
individual capacity as a Correctional
Officer at Arrendale State Prison,

         Defendants.

## SUMMONS

TO THE ABOVE-NAMED DEFENDANT, AMBER STONE, in her individual
capacity as a Counselor at Arrendale State Prison:

   You are hereby summoned and required to file with the Clerk of said Court and

serve upon Plaintiffs' attorneys, whose names and addresses are:

Lyle Griffin Warshauer
Michael E. Pérez
WARSHAUER LAW GROUP, P.C.
2740 Bert Adams Road
Atlanta, GA 30339
*Attorneys for Plaintiffs*

Darl H. Champion, Jr.
**THE CHAMPION FIRM, P.C.**
2675 Paces Ferry Road SE
Suite 260
Atlanta, GA 30339
*Attorneys for Plaintiffs*

Sidney M. Weinstein
**LAW OFFICE OF SIDNEY WEINSTEIN**
Post Office Box 170513
97 Leslie Street, SE
Atlanta, GA 30317
*Attorneys for Plaintiffs*

an answer to the complaint which is herewith served upon you, within 30 days after
service of this summons upon you, exclusive of the day of service; unless proof of service
of this complaint is not filed within five (5) business days of such service. Then, time to
answer shall not commence until such proof of service has been filed.  **IF YOU FAIL
TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR
THE RELIEF DEMANDED IN THE COMPLAINT.**

This __19th__ day of May, 2016.

David C. Wall
Clerk of Superior Court

By: ___David C. Wall___
~~Deputy~~ Clerk

IN THE SUPERIOR COURT OF HABERSHAM COUNTY
STATE OF GEORGIA

ANGELA and JAMES FISCHER,
Individually and as the Guardians of
MOLLIANNE FISCHER, an Adult
Ward,

        Plaintiffs,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS,
    BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA for GEORGIA
CORRECTIONAL HEALTHCARE,
a division of AUGUSTA
UNIVERSITY,
    COMMISSIONER BRIAN
OWENS, in his individual capacity as
the former Commissioner of the
Georgia Department of Corrections,
    DR. BILLY NICHOLS, in his
individual capacity as Medical
Director of Georgia Correctional
Healthcare,
    DR. EDWARD BAILEY, in his
individual capacity as the former
Director of Georgia Correctional
Healthcare,
    DR. SHARON LEWIS, in her
individual capacity as the Medical
Director for the Georgia Department
of Corrections,
    KATHY SEABOLT, in her
individual capacity as the former
Warden of Arrendale State Prison,
    ANGELA GRANT, in her
individual capacity as the Warden of
Pulaski State Prison,

JURY TRIAL DEMANDED

CIVIL ACTION
FILE NO. _2016CV0263CC_

DR. YVON NAZAIRE, in his
individual capacity as the former
Medical Director at Pulaski State
Prison,
 BETTY RODGERS, in her
individual capacity as the Health
Services Administrator at Pulaski
State Prison,
 DANNY FINN, in his individual
capacity as the Director of Human
Resources for Georgia Correctional
Healthcare,
 ALABA ADESHIGBIN, in her
individual capacity as a Nurse at
Arrendale State Prison,
 DANIEL WEISE, in his individual
capacity as a Nurse at Arrendale State
Prison,
 ELIZABETH GEE, in her
individual capacity as a Correctional
Officer at Arrendale State Prison,
 HANNAH FULLER, in her
individual capacity as a Nurse at
Arrendale State Prison,
 NURSE PAGE, in her individual
capacity as a Nurse at Arrendale State
Prison,
 AMBER STONE, in her individual
capacity as a Counselor at Arrendale
State Prison,
 KARLA SUE KIEFER, in her
individual capacity as a Nurse at
Arrendale State Prison,
 KRISTI ADDISON, in her
individual capacity as a Nurse at
Arrendale State Prison,
 YHANA WHITWORTH, in her
individual capacity as a Nurse at
Arrendale State Prison,
 RHONDA STOVALL, in her
individual capacity as a Nurse at
Arrendale State Prison,
 PATRICK ARNOLD, in his

-2-

individual capacity as a Correctional
Officer at Arrendale State Prison,
    CHELSEA GOSS, in her individual
capacity as a Correctional Officer at
Arrendale State Prison,
    JUSTIN GRIZZLE, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    WAYMAN JACKSON, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    STEVEN LEWICKI, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    ROBERT PRATHER, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    MICHAEL ROBINSON, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    CRYSTAL TYLER, in her
individual capacity as a Correctional
Officer at Arrendale State Prison,

        Defendants.

## SUMMONS

TO THE ABOVE-NAMED DEFENDANT, AMBER STONE, in her individual
capacity as a Counselor at Arrendale State Prison:

    You are hereby summoned and required to file with the Clerk of said Court and

serve upon Plaintiffs' attorneys, whose names and addresses are:

Lyle Griffin Warshauer
Michael E. Pérez
WARSHAUER LAW GROUP, P.C.
2740 Bert Adams Road
Atlanta, GA 30339
*Attorneys for Plaintiffs*

-3-

Darl H. Champion, Jr.
**THE CHAMPION FIRM, P.C.**
2675 Paces Ferry Road SE
Suite 260
Atlanta, GA 30339
*Attorneys for Plaintiffs*

Sidney M. Weinstein
**LAW OFFICE OF SIDNEY WEINSTEIN**
Post Office Box 170513
97 Leslie Street, SE
Atlanta, GA 30317
*Attorneys for Plaintiffs*

an answer to the complaint which is herewith served upon you, within 30 days after

service of this summons upon you, exclusive of the day of service; unless proof of service

of this complaint is not filed within five (5) business days of such service. Then, time to

answer shall not commence until such proof of service has been filed. **IF YOU FAIL**

**TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR**

**THE RELIEF DEMANDED IN THE COMPLAINT.**

This 19th day of May, 2016.

David C. Wall
Clerk of Superior Court

By: ____David C. Wall____
~~Deputy~~ Clerk

-4-

IN THE SUPERIOR COURT OF HABERSHAM COUNTY
STATE OF GEORGIA

ANGELA and JAMES FISCHER,
Individually and as the Guardians of
MOLLIANNE FISCHER, an Adult
Ward,

      Plaintiffs,

v.

GEORGIA DEPARTMENT OF
CORRECTIONS,
    BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA for GEORGIA
CORRECTIONAL HEALTHCARE,
a division of AUGUSTA
UNIVERSITY,
    COMMISSIONER BRIAN
OWENS, in his individual capacity as
the former Commissioner of the
Georgia Department of Corrections,
    DR. BILLY NICHOLS, in his
individual capacity as Medical
Director of Georgia Correctional
Healthcare,
    DR. EDWARD BAILEY, in his
individual capacity as the former
Director of Georgia Correctional
Healthcare,
    DR. SHARON LEWIS, in her
individual capacity as the Medical
Director for the Georgia Department
of Corrections,
    KATHY SEABOLT, in her
individual capacity as the former
Warden of Arrendale State Prison,
    ANGELA GRANT, in her
individual capacity as the Warden of
Pulaski State Prison,

JURY TRIAL DEMANDED

CIVIL ACTION
FILE NO. 2016 C V D263 CC



2016 MAY 19 AM 11:39
Book Page Recorded
David C. Wall

DR. YVON NAZAIRE, in his individual capacity as the former Medical Director at Pulaski State Prison,

BETTY RODGERS, in her individual capacity as the Health Services Administrator at Pulaski State Prison,

DANNY FINN, in his individual capacity as the Director of Human Resources for Georgia Correctional Healthcare,

ALABA ADESHIGBIN, in her individual capacity as a Nurse at Arrendale State Prison,

DANIEL WEISE, in his individual capacity as a Nurse at Arrendale State Prison,

ELIZABETH GEE, in her individual capacity as a Correctional Officer at Arrendale State Prison,

HANNAH FULLER, in her individual capacity as a Nurse at Arrendale State Prison,

NURSE PAGE, in her individual capacity as a Nurse at Arrendale State Prison,

AMBER STONE, in her individual capacity as a Counselor at Arrendale State Prison,

KARLA SUE KIEFER, in her individual capacity as a Nurse at Arrendale State Prison,

KRISTI ADDISON, in her individual capacity as a Nurse at Arrendale State Prison,

YHANA WHITWORTH, in her individual capacity as a Nurse at Arrendale State Prison,

RHONDA STOVALL, in her individual capacity as a Nurse at Arrendale State Prison,

PATRICK ARNOLD, in his

individual capacity as a Correctional
Officer at Arrendale State Prison,
    CHELSEA GOSS, in her individual
capacity as a Correctional Officer at
Arrendale State Prison,
    JUSTIN GRIZZLE, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    WAYMAN JACKSON, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    STEVEN LEWICKI, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    ROBERT PRATHER, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    MICHAEL ROBINSON, in his
individual capacity as a Correctional
Officer at Arrendale State Prison,
    CRYSTAL TYLER, in her
individual capacity as a Correctional
Officer at Arrendale State Prison,

        Defendants.

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Angela and James Fischer, individually and as the
guardians of Mollianne Fischer, an adult ward, and file this Complaint for Damages
against Defendants, as follows:

## PARTIES AND JURISDICTION

1.

Plaintiffs Angela and James Fischer are the parents of Mollianne Fischer
("Molli"), and they are the duly appointed guardians of Molli, who is an adult ward.

-3-

Plaintiffs file this Complaint against Defendants to recover damages arising out of the severe injuries their daughter sustained when she did not receive proper medical care while she was in the custody of the Georgia Department of Corrections at Arrendale State Prison and Pulaski State Prison. As a result of receiving inadequate medical care, and in some instances no medical care at all, Molli sustained catastrophic injuries that have left her in a persistent vegetative state. Plaintiffs seek relief under the Georgia State Tort Claims Act and federal statutory and constitutional provisions, including Eighth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

2.

Defendant Georgia Department of Corrections ("GDC") is the state government entity for which one or more state officers or employees were acting at the time of the acts or omissions that give rise to this Complaint. In particular, Molli was in the custody of the GDC when she was denied adequate medical care, and one or more officers, agents, or employees of the GDC were negligent in failing to provide her with adequate medical care. Defendant GDC is, therefore, the proper Defendant under O.C.G.A. § 50-21-25.

    a.    Defendant GDC can be served with process on its chief executive officer, Commissioner Homer Bryson, at his usual office address, 300 Patrol Road, Forsyth, Georgia 31029.

    b.    The GDC must also be served by having the Director of the Risk Management Division of the Department of Administrative Services,

Wade Damron, served at his usual office address, 200 Piedmont Avenue, Suite 1208, West Tower, Atlanta, Georgia 30334.

c.      A copy of the Complaint, stamped with the filing date, will also be mailed by certified mail, return receipt requested, to the Georgia Attorney General, Sam Olens, at his usual office address, 40 Capitol Square, SW, Atlanta, Georgia 30334. A certificate stating that this requirement has been met is attached hereto.

3.

Board of Regents of the University System of Georgia ("Board of Regents") is the state government entity that is vested with the governance, control, and management of Georgia's public colleges and universities, including Augusta University. Georgia Correctional Healthcare, a division of Augusta University, is the state government entity for which one or more state officers or employees were acting at the time of the acts or omissions that give rise to this Complaint. In particular, Georgia Correctional Healthcare provides medical services to inmates in the custody of the GDC, and one or more officers, agents, or employees of Georgia Correctional Healthcare were negligent in failing to provide Molli with adequate medical care. Defendant Board of Regents is, therefore, the proper Defendant under O.C.G.A. § 50-21-25.

a.      Defendant Board of Regents can be served with process on its chief executive officer, Chancellor Hank Huckaby, at his usual office address, Office of the Chancellor, Board of Regents of the University System of Georgia, 270 Washington Street, SW, Suite 8062, Atlanta, Georgia

30334 or it can be served with process on the Managing Director of Georgia Correctional Healthcare, Lynn Bill, at her usual office address, Georgia Correctional Healthcare, 1120 15th Street, Augusta, Georgia, 30912.

b.     The Board of Regents must also be served by having the Director of the Risk Management Division of the Department of Administrative Services, Wade Damron, served at his usual office address, 200 Piedmont Avenue, Suite 1208, West Tower, Atlanta, Georgia 30334.

c.     A copy of the Complaint, stamped with the filing date, will also be mailed by certified mail, return receipt requested, to the Georgia Attorney General, Sam Olens, at his usual office address, 40 Capitol Square, SW, Atlanta, Georgia 30334. A certificate stating that this requirement has been met is attached hereto.

4.

Defendants GDC and Board of Regents are being sued under the State Tort Claims Act. As required by the Act, Plaintiffs gave written notice of the claim against the State of Georgia within 12 months of the date of the loss by mailing the notice via certified mail return receipt requested to the Risk Management Division of the Department of Administrative Services and the responsible state governmental entities. A true and correct copy of the notice of claim, together with the certified mail return receipts, is attached hereto as **EXHIBIT A**.

5.

The GDC owns, operates, and manages Arrendale State Prison in Alto, Habersham County, Georgia, and Pulaski State Prison in Hawkinsville, Pulaski County, Georgia, which are both women's prisons. The GDC is legally responsible for providing medical care to inmates in the custody of its correctional facilities. GDC undertook to provide medical care to inmates in its custody by contracting with Georgia Correctional Healthcare, a division of Augusta University. At all times relevant to this action, Georgia Correctional Healthcare provided healthcare to inmates in the custody of GDC correctional facilities. At all times relevant to this action, a medical provider-patient relationship existed between Molli Fischer and GDC, Georgia Correctional Healthcare, and the individual agents or employees of each of those entities that were medical providers.

6.

Defendants GDC and Board of Regents are being sued under the State Tort Claims Act for state law negligence claims that include allegations of professional malpractice. Pursuant to O.C.G.A. § 9-11-9.1, attached hereto and incorporated by reference as **EXHIBIT B** is the Affidavit of Lawrence H. Mendel, D.O., FAACP, CCHP, who is qualified as an expert witness on the issues raised in the Complaint. Dr. Mendel's Affidavit specifies at least one negligent act or omission on the part of agents and employees of the GDC and Board of Regents, and the factual basis that underlies the negligent acts or omissions that resulted in injuries to Molli Fischer.

-7-

7.

Brian Owens is the former Commissioner of the GDC, and at all times relevant to this action he was acting in the course and scope of his employment with the GDC as its Commissioner. Defendant Owens is being sued in his individual capacity. Defendant Owens may be served with Summons and Complaint as allowed by law.

8.

Dr. Billy Nichols is the statewide Medical Director for Georgia Correctional Healthcare and has served in this role since 2012, and at all times relevant to this action he was acting in the course and scope of his employment with Georgia Correctional Healthcare as the Medical Director. Defendant Nichols is being sued in his individual capacity. Defendant Nichols may be served with Summons and Complaint as allowed by law.

9.

Dr. Edward Bailey is the former statewide Medical Director for Georgia Correctional Healthcare, and at all times relevant to this action he was acting in the course and scope of his employment with Georgia Correctional Healthcare as the Medical Director until he retired from the position in 2012. Defendant Bailey is being sued in his individual capacity. Defendant Bailey may be served with Summons and Complaint as allowed by law.

10.

Defendant Dr. Sharon Lewis is the Medical Director for the GDC, and at all times relevant to this action she was acting in the course and scope of her employment with the

-8-

GDC as its Medical Director. Defendant Lewis is being sued in her individual capacity. Defendant Lewis may be served with Summons and Complaint as allowed by law.

11.

Kathy Seabolt is the former Warden of Arrendale State Prison, a GDC correctional facility, and all times relevant to this action she was acting in the course and scope of her employment with the GDC as the Warden of Arrendale State Prison. Defendant Seabolt is being sued in her individual capacity. Defendant Seabolt may be served with Summons and Complaint as allowed by law.

12.

Angela Grant is the Warden of Pulaski State Prison, a GDC correctional facility, and all times relevant to this action she was acting in the course and scope of her employment with the GDC as the Warden of Pulaski State Prison. Defendant Grant is being sued in her individual capacity. Defendant Grant may be served with Summons and Complaint as allowed by law.

13.

Dr. Yvon Nazaire is the former Medical Director at Pulaski State Prison, and at all times relevant to this action he was acting in the course and scope of his employment with Georgia Correctional Healthcare as the Medical Director at Pulaski State Prison. Defendant Nazaire is being sued in his individual capacity. Defendant Nazaire may be served with Summons and Complaint as allowed by law.

14.

Betty Rodgers is the Health Services Administrator at Pulaski State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as the Health Services Administrator at Pulaski State Prison. Defendant Rodgers is being sued in her individual capacity. Defendant Rodgers may be served with Summons and Complaint as allowed by law.

15.

Danny Finn is the Director of Human Resources for Georgia Correctional Healthcare, and at all times relevant to this action he was acting in the course and scope of his employment with Georgia Correctional Healthcare as its Director of Human Resources. Defendant Finn is being sued in his individual capacity. Defendant Finn may be served with Summons and Complaint as allowed by law.

16.

Alaba Adeshigbin is a Nurse Practitioner at Arrendale State Prison, and all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a nurse at the prison. Defendant Adeshigbin is being sued in her individual capacity. Defendant Adeshigbin may be served with Summons and Complaint as allowed by law.

17.

Daniel Weise is a nurse at Arrendale State Prison, and at all times relevant to this action he was acting in the course and scope of his employment with Georgia Correctional Healthcare as a nurse at the prison. Defendant Weise is being sued in his

-10-

individual capacity. Defendant Weise may be served with Summons and Complaint as allowed by law.

18.

Elizabeth Gee is a correctional officer at Arrendale State Prison, and all times relevant to this action she was acting in the course and scope of her employment with GDC as a correctional officer at the prison. Defendant Gee is being sued in her individual capacity. Defendant Gee may be served with Summons and Complaint as allowed by law.

19.

Hannah Fuller is a nurse at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a nurse at the prison. Defendant Fuller is being sued in her individual capacity. Defendant Fuller may be served with Summons and Complaint as allowed by law.

20.

Nurse Page is a nurse at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a nurse at the prison. Nurse Page is being sued in her individual capacity. Nurse Page may be served with Summons and Complaint as allowed by law.

21.

Amber Stone is a mental health professional/counselor at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a mental health professional/counselor at the prison. Defendant Stone is being sued in her individual capacity. Defendant Stone may be served with Summons and Complaint as allowed by law.

22.

Karla Sue Kiefer is a nurse at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a nurse at the prison. Defendant Kiefer is being sued in her individual capacity. Defendant Kiefer may be served with Summons and Complaint as allowed by law.

23.

Kristi Addison is a nurse at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a nurse at the prison. Defendant Addison is being sued in her individual capacity. Defendant Addison may be served with Summons and Complaint as allowed by law.

24.

Yhana Whitworth is a nurse at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia

Correctional Healthcare as a nurse at the prison. Defendant Whitworth is being sued in her individual capacity. Defendant Whitworth may be served with Summons and Complaint as allowed by law.

25.

Rhonda Stovall is a nurse at Arrendale State Prison, and at all times relevant to this action she was acting in the course and scope of her employment with Georgia Correctional Healthcare as a nurse at the prison. Defendant Stovall is being sued in her individual capacity. Defendant Stovall may be served with Summons and Complaint as allowed by law.

26.

Patrick Arnold is a correctional officer at Arrendale State Prison, and all times relevant to this action he was acting in the course and scope of his employment with GDC as a correctional officer at the prison. Defendant Arnold is being sued in his individual capacity. Defendant Arnold may be served with Summons and Complaint as allowed by law.

27.

Chelsea Goss is a correctional officer at Arrendale State Prison, and all times relevant to this action she was acting in the course and scope of her employment with GDC as a correctional officer at the prison. Defendant Goss is being sued in her individual capacity. Defendant Goss may be served with Summons and Complaint as allowed by law.

28.

Justin Grizzle is a correctional officer at Arrendale State Prison, and all times relevant to this action he was acting in the course and scope of his employment with GDC as a correctional officer at the prison. Defendant Grizzle is being sued in his individual capacity. Defendant Grizzle may be served with Summons and Complaint as allowed by law.

29.

Wayman Jackson is a correctional officer at Arrendale State Prison, and all times relevant to this action he was acting in the course and scope of his employment with GDC as a correctional officer at the prison. Defendant Jackson is being sued in his individual capacity. Defendant Jackson may be served with Summons and Complaint as allowed by law.

30.

Steven Lewicki is a correctional officer at Arrendale State Prison, and all times relevant to this action he was acting in the course and scope of his employment with GDC as a correctional officer at the prison. Defendant Lewicki is being sued in his individual capacity. Defendant Lewicki may be served with Summons and Complaint as allowed by law.

31.

Robert Prather is a correctional officer at Arrendale State Prison, and all times relevant to this action he was acting in the course and scope of his employment with GDC as a correctional officer at the prison. Defendant Prather is being sued in his

individual capacity. Defendant Prather may be served with Summons and Complaint as allowed by law.

32.

Michael Robinson is a correctional officer at Arrendale State Prison, and all times relevant to this action he was acting in the course and scope of his employment with GDC as a correctional officer at the prison. Defendant Robinson is being sued in his individual capacity. Defendant Robinson may be served with Summons and Complaint as allowed by law.

33.

Crystal Tyler is a correctional officer at Arrendale State Prison, and all times relevant to this action she was acting in the course and scope of her employment with GDC as a correctional officer at the prison. Defendant Tyler is being sued in her individual capacity. Defendant Tyler may be served with Summons and Complaint as allowed by law.

34.

Venue is proper in this County and Court.

## FACTS

35.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

36.

The problem of inadequate medical care for inmates in the Georgia prison system

-15-

is widespread. Female inmates, in particular, have been subjected to substandard medical care that is of a lesser quality than the medical care that male inmates receive.

37.

In 2014, at least one in every five physicians working in Georgia's prisons had been sanctioned by a state medical board for some form of misconduct. While 20% of the doctors working in Georgia prisons in 2014 had an adverse medical board order against them, only 2.4% of the general population of licensed physicians had ever had a similar order issued against them. Despite hiring physicians with questionable pasts, the GDC and Georgia Correctional Healthcare provide only limited oversight of individual physicians working in the state prisons.

38.

One doctor in particular, Dr. Yvon Nazaire, was the subject of a December 2004 Consent Agreement and Order from the New York Board for Professional Misconduct that found he committed gross negligence in his evaluation, diagnosis, and treatment of five emergency room patients at a New York hospital. Based on his multiple acts of gross negligence, the New York Board placed Dr. Nazaire on probation for three years. As part of his probation, Dr. Nazaire was only allowed to practice medicine while being monitored by a licensed, board certified physician.

39.

Despite the sanctions from the New York Board, Georgia Correctional Healthcare, through its Director of Human Resources, Defendant Danny Finn, offered Dr. Nazaire a position as the Medical Director at Pulaski State Prison effective September 1, 2006. A

-16-

condition of the offer was the successful completion of the "full credentialing process to include but not necessarily be limited to the following: reference checks, background checks, verification of licensure...."

40.

Dr. Nazaire apparently completed Georgia Correctional Healthcare's "full credentialing process," as he started his job as the Medical Director at Pulaski State Prison in September 2006. Defendant Finn and Defendant Dr. Bailey, the statewide Medical Director for Georgia Correctional Healthcare in September 2006, did not attach any special conditions to Dr. Nazaire's ability to practice medicine at Pulaski State Prison. Instead, Dr. Nazaire was allowed to practice medicine at Pulaski State Prison without being supervised by any licensed physicians, and nobody required that Dr. Nazaire comply with any of the terms and conditions of the New York Board's Consent Order and Agreement.

41.

From September 2006 until his termination nine years later in September 2015, Dr. Nazaire worked as the Medical Director at Pulaski State Prison. During that time, at least 15 women died in custody while under Dr. Nazaire's care, including at least 11 in the last five years of his employment, and an additional five inmates from Pulaski State Prison died within months of being transferred to other facilities or released due to the seriousness of their medical conditions. Nevertheless, Dr. Nazaire's annual reviews by Defendant Dr. Nichols, Defendant Dr. Bailey, and Defendant Rodgers remained largely unchanged. In fact, many of the "comments" in the reviews were simply repeated

-17-

verbatim in each annual review, regardless of the identity of the person completing the review.

42.

In December 2015, Dr. William Kanto completed a report at the request of the Board of Regents and Georgia Correctional Healthcare. The report was titled "Review of Processes at Georgia Correctional Healthcare." In his report, Dr. Kanto concluded that there were "systemic issues" with the medical care provided to inmates, and that there were "material weaknesses in the system used in providing women's health care in the prison system." Dr. Kanto's report lauded the health care provided to male prisoners by Georgia Correctional Healthcare, but concluded that "[u]nfortunately, there is not a similar system for female inmates." With regard to Dr. Nazaire, Dr. Kanto wrote, "it is my opinion that, on balance, Dr. Nazaire's standard of practice fell below an acceptable standard of care for patients who are incarcerated."

43.

Unfortunately for Molli Fischer, on May 21, 2014, she entered this prison system that was rife with material weaknesses and systemic issues in the delivery of medical care and services to female inmates. When she entered Arrendale State Prison on May 21, 2014, she was a competent, fully functioning adult. When she left Pulaski State Prison in an ambulance on June 30, 2014, she had suffered a hypoxic brain injury as a result of inadequate medical care, which has left her in a persistent vegetative state.

44.

Upon being transferred from Rabun County Jail to Arrendale State Prison on May

21, 2014, Molli was assessed during her diagnostic intake, and she was reported to have numerous health problems and she noted she was having chills.

45.

Defendant Stone performed a mental health evaluation on Molli on the morning of May 21, 2014 and noted that Molli was anxious due to numerous medical issues, and that Molli had a history of depression.

46.

On May 23, 2014, Defendant Adeshigbin evaluated Molli in the medical unit. Molli reported she had passed out twice and had experienced vomiting, dizziness, chills, and asthma. Defendant Adeshigbin ordered lab work to be completed four days later and prescribed Reglan, a medication for acid reflux, to treat her vomiting and dizziness, and an inhaler for asthma.

47.

On May 24, 2014, Defendant Weise evaluated Molli in the clinic at approximately 3:00 p.m. Molli was complaining of multiple problems, but Nurse Weise suspected that Molli was faking her illness.

48.

Later in the day on May 24, 2014, at approximately 6:45 p.m., Nurse Weise assessed Molli again for shortness of breath. Molli's blood pressure was 124/76, her temperature was 96, and her oxygen saturation was low at 95%. Nevertheless, Nurse Weise instructed Molli to "not fake illness."

49.

On May 25, 2014, at 6:15 a.m., Molli was found on the floor half naked. Defendant Arnold told Molli to get up and get dressed, but Molli responded she could not because she was sick. Defendant Arnold informed Defendant Gee of his interaction with Molli.

50.

At approximately 10:04 a.m. on May 25, 2014, Defendant Gee conferred with Defendant Stone and informed Defendant Stone that Molli was laying on the floor and had urinated on herself. Defendant Gee told Defendant Stone that Molli had been at medical on Friday but they could not find anything wrong with her. Molli's urine was not tested for infection.

51.

Between 10:04 a.m. and 10:40 a.m. on May 25, 2014, Defendant Fuller reexamined Molli and found that Molli had a small amount of blood in her mouth. Molli refused to answer orientation questions and officer instructions. Defendant Fuller informed Defendant Stone, who concluded that Molli did not have a mental health issue and that she should be sent to lockdown for failure to follow instructions.

52.

Between 10:04 a.m. and 10:40 a.m. on May 25, 2014, prior to Molli being forcibly moved to lockdown, Defendant Kiefer assessed Molli's condition and noted her skin was warm and dry and her respirations unlabored.

-20-

53.

On May 25, 2014, at approximately 10:40 a.m., physical force was used to move Molli to a segregation unit. Molli was unable to stand or move on her own. During the physical removal process, Molli was lifted by her arms behind her back, she was placed on a rolling dolly, and she was thrown to the ground.

54.

After she was forcibly moved to a segregation unit, Defendant Kiefer reassessed Molli and determined there was no change in her condition. Molli's oxygen saturation was recorded as 94%, which was abnormal.

55.

On May 25, 2014, at approximately 11:28 a.m., Defendant Page called Nurse Toni Maranda Frankum-Shook, a nurse at the Rabun County Jail, where Molli had previously stayed before being transferred to Arrendale State Prison. Nurse Frankum-Shook relayed to Defendant Page that although Molli had problems cooperating early in her incarceration, she had never experienced incontinence. Nurse Frankum-Shook offered to send Molli's medical records, but Defendant Page rejected the offer.

56.

On May 25, 2014, at approximately 6:07 p.m., Defendant Addison reviewed Molli's placement in segregation and concluded there were no medical contraindications to Molli being housed in segregation.

57.

On May 26, 2014, at approximately 7:35 p.m., Defendant Russell reported to

Defendant Whitworth that Molli had not eaten in two days, was laying the floor, was not bathing, and was verbally unresponsive. Defendant Whitworth determined this behavior to be "not unusual" for Molli.

58.

On May 27, 2014, at approximately 5:05 a.m., Defendant Russell found Molli covered in feces. Defendant Russell reported to Defendant Whitworth that Molli had defecated and smeared feces on her arms. Defendant Whitworth stated that she would report the incident to Defendant Stovall to discuss with Molli's treatment team.

59.

For more than four hours, Molli lay covered in her own feces without any medical assistance. At approximately 9:30 a.m. on May 27, 2014, Molli was taken to the trauma room. Her vitals at that time were blood pressure of 118/62, pulse 90, respirations 26, and her oxygen saturation was at 82%. She was provided with oxygen via a nasal cannula at 2 liters, then increased to 3 liters. The supplemental oxygen did not increase her oxygen saturation level.

60.

At approximately 9:30 a.m. on May 27, 2014, Molli was examined by Dr. Bond, which was the first time she was examined by a physician. Dr. Bond diagnosed Molli with acute respiratory distress, possible aspiration and/or pulmonary edema.

61.

At approximately 10:02 a.m. on May 27, 2014, Molli was transported by EMS to Habersham Medical Center.

62.

At approximately 10:56 a.m. on May 27, 2014, Dr. James Hamilton evaluated Molli in the emergency room at Habersham Medical Center. Dr. Hamilton documented that Molli did not respond except by opening her eyes and moaning to sternal rub. CT scans showed mild brain swelling, pneumonia and inflammatory changes around her pancreas. There was also coffee ground emesis on her face and in her mouth. She was diagnosed with septic shock, which required numerous medications to maintain a living, survivable blood pressure.

63.

At approximately 4:40 p.m. on May 27, 2014, Molli was transferred to Northeast Georgia Medical Center in a coma. Molli remained in a coma until she awoke on June 2, 2014.

64.

Molli remained at Northeast Georgia Medical Center through June 17, 2014. While there, she was treated for pneumonia, sepsis, renal failure (dialysis initiated), urinary tract infection, anemia, pancreatitis and abnormal findings on a colonoscopy.

65.

When Molli's hemoglobin stabilized, it was determined that Molli was stable for discharge to a prison where she could receive dialysis three days per week. Prior to incarceration, Molli had never had kidney failure or been on dialysis.

66.

On June 17, 2014, Molli was transferred to Pulaski State Prison, which has a

-23-

dialysis unit. Molli was housed in the infirmary and she reported, and it was noted, that she could not walk or stand. She required use of a bedpan.

67.

On June 18, 2014, it was noted Molli had a pressure ulcer on her left heel and her foot was resting up on a pillow.

68.

On or about June 19, 2014, Defendant Dr. Nazaire requested a physical therapy consult and noted in Molli's medical history that she had general weakness and diagnosed her with lower extremity weakness.

69.

On or about June 24, 2014, Dr. Nazaire received a call from a gastroenterologist who reported that the final pathology report on Molli's colon biopsy from Northeast Georgia Medical Center was positive for Crohn's Colitis.

70.

On or around June 30, 2014, it is documented that Molli went into cardiorespiratory arrest while receiving dialysis at Pulaski, although there is no record of Molli ever receiving dialysis while housed at Pulaski State Prison. Dr. Nazaire documented that he performed CPR on Molli and that she had been doing okay until her cardiac arrest, except for complete weakness.

71.

On or about June 30, 2014, Molli went to Taylor County Medical Center by ambulance after she went into cardiorespiratory arrest. Molli was then transferred to

-24-

Atlanta Medial Center via ambulance and was diagnosed as having suffered from a pulmonary embolus and hypoxic ischemic encephalopathy.

72.

Molli has been in a persistent vegetative state since June 30, 2014.

## COUNT ONE—STATE LAW PROFESSIONAL NEGLIGENCE CLAIMS AGAINST DEFENDANTS GDC AND BOARD OF REGENTS

73.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

74.

Defendants GDC and Board of Regents, through their agents and employees, including, but not limited to, Defendants Adeshigbin, Weise, Kiefer, Fuller, Page, Stone, Addison, Whitworth, Stovall and Dr. Nazaire had a duty to exercise ordinary care, skill, and diligence in evaluating, diagnosing, and treating Molli Fischer in a manner that was in accordance with the applicable professional standard of care of patients under like circumstances and similar conditions as Molli.

75.

Defendants GDC and Board of Regents breached their duty to exercise ordinary care, skill, and diligence in evaluating, diagnosing, and treating Molli Fischer in at least the following particulars:

    a. The care given to Molli Fischer by Defendant Adeshigbin on or around May 23, 2014, fell below the standard of minimum care and treatment required of a

-25-

nurse practitioner in at least the following respects: (1) failing to recognize that Molli's complaints of chills, dizziness, passing out and vomiting, in addition to her elevated heart rate of 113 were signs and symptoms of possible dehydration and infection; and (2) failing to notify a doctor of Molli's abnormal vital signs and symptoms so that she could be further evaluated and receive appropriate treatment.

b. The care given to Molli Fischer by Defendant Weise on or around May 24, 2014, fell below the standard of minimum care and treatment required of a registered nurse in at least the following respects: (1) failing to recognize that Molli's oxygen saturation of 95% was abnormal for a thirty-nine-year-old woman and in combination with Molli's elevated heart rate of 96 and her complaint of being short of breath, these were signs of infection; and (2) failing to notify a doctor of Molli's abnormal vital signs and symptoms of infection so that she could be further evaluated and receive appropriate treatment.

c. The care given to Molli Fischer by Defendant Kiefer on or around May 25, 2014 fell below the standard of minimum care and treatment required of a registered nurse in at least the following respects: (1) failing to recognize that Molli's oxygen saturation of 94% was abnormal for a thirty-nine-year-old woman and in combination with Molli's inability to stand up were signs of infection; (2) failing to notify a doctor of Molli's abnormal vital signs and symptoms of infection so that she could be further evaluated and receive

-26-

appropriate treatment; and (3) allowing Molli to be transferred to a lockdown unit when Molli was demonstrating signs and symptoms of infection.

d. More specifically, the care given to Molli Fischer on or around May 25, 2014 by Nurse Fuller fell below the standard of minimum care and treatment required of a mental health nurse in at least the following respects: (1) failing to recognize that incontinence, tongue biting and failure to answer "orientation questions," were signs of a medical illness; (2) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment; and (3) allowing Molli to be transferred to a lockdown cell before being evaluated by a physician.

e. The care given to Molli Fischer on or around May 25, 2014 by Defendant Stone fell below the standard of minimum care and treatment required of a mental health counselor in at least the following respects: (1) failing to recognize that incontinence, tongue biting and failure to answer "orientation questions," were signs of a medical illness; (2) failing to personally examine Molli when she heard of her abnormal symptoms; (3) failing to notify a doctor of Molli's abnormal signs and symptoms so that she could be further evaluated and receive appropriate treatment; and (4) allowing Molli to be transferred to a lockdown cell before being evaluated by a physician.

f. More specifically, the care given to Molli Fischer on or around May 25, 2014 by Nurse Page fell below the standard of minimum care and treatment required

-27-

of a mental health nurse in at least the following respects: (1) failing to recognize that incontinence was a sign of a medical illness; and (2) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment.

g. The care given to Molli Fischer at or around 6:07 p.m. on May 25, 2014 by Defendant Addison, fell below the standard of minimum care and treatment required of a nurse in at least the following respects: (1) failing to recognize, while performing her segregation record review of Molli's records, that Molli was exhibiting signs and symptoms of a serious medical condition which were medical contraindications for placement in disciplinary isolation; (2) failing to notify a doctor of Molli's abnormal signs and symptoms so that she could be further evaluated and receive appropriate treatment; and (3) allowing Molli to remain in an isolation cell without being evaluated by a physician.

h. The care given to Molli Fischer on May 26 and May 27, 2014 by Defendant Whitworth fell below the standard of minimum care and treatment required of a nurse in at least the following respects: (1) failing to recognize that not eating for two days and being verbally unresponsive were signs of illness; (2) failing to recognize that Molli's absence of oral intake could lead to dehydration; (3) failing to recognize that incontinence is a symptom of serious illness; (4) failing to personally examine Molli when she heard of her abnormal

symptoms; and (5) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment.

i.   The care given to Molli Fischer on or around May 27, 2014 by Defendant Stovall, fell below the standard of minimum care and treatment required of a nurse in at least the following respects: (1) failing to recognize that being incontinent is a symptom of serious illness; (2) failing to personally examine Molli when she heard of her abnormal symptoms; and (3) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment.

j.   The care given to Molli Fischer at Pulaski State Prison by Dr. Nazaire, fell below the standard of minimum care and treatment required of a physician in at least the following respects: (1) failing to recognize that because of Molli's debilitated condition due to her recent serious illness and because of her past history of DVT, Molli was at an increased risk for developing blood clots and pulmonary emboli; (2) failing to place Molli on appropriate DVT prophylaxis; (3) failing to comply with the order to provide dialysis, as there is no documentation of dialysis, for Molli Fischer three days per week as ordered in her discharge from NEGMC; and (4) failing to request that Molli's dialysis catheter be evaluated for exchange/replacement prior to June 30, 2014 despite having knowledge that the catheter was not functioning properly.

76.

Defendants GDC and Board of Regents are liable for the negligent acts and omissions of their agents and employees under the doctrine of respondeat superior.

77.

Had the aforementioned deviations from the applicable standards of care not occurred, Molli Fischer would have been diagnosed with an infectious process prior to May 27, 2014 and appropriately treated. Had the aforementioned deviations from the applicable standards of care not occurred, on or around June 19, 2014, Molli Fischer would have received the appropriate DVT prophylaxis and would not have suffered the injuries and insults that have left her in a persistent vegetative state.

78.

As a direct and proximate result of the professional negligence of the GDC and Board of Regents, and their agents and employees, Molli Fischer sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages, and Plaintiffs demand a judgment in excess of $10,000.

-30-

## COUNT TWO—STATE LAW GENERAL NEGLIGENCE
## CLAIM AGAINST GDC

79.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

80.

Defendant GDC's correctional officers, including, but not limited to, Defendants Gee, Arnold, Goss, Grizzle, Jackson, Lewicki, Prather, Robinson, and Tyler owed Molli a duty to exercise ordinary care in evaluating Molli's condition and securing medical treatment for her while she was in the care and custody of the GDC.

81.

Defendant GDC's correctional officers, including, but not limited to, Defendants Gee, Arnold, Goss, Grizzle, Jackson, Lewicki, Prather, Robinson and Tyler, breached their duty to exercise ordinary care in evaluating Molli's condition and secure medical treatment for her while she was in the care and custody of the GDC.

82.

Defendant GDC is liable for the negligent acts and omissions of its agents and employees under the doctrine of respondeat superior.

83.

As a direct and proximate result of the professional negligence of the GDC, and their agents and employees, Molli Fischer sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and

-31-

emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages.

## COUNT THREE—STATE LAW GENERAL NEGLIGENCE CLAIMS AGAINST GDC AND BOARD OF REGENTS FOR NEGLIGENT HIRING, SUPERVISION, AND RETENTION

### 84.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

### 85.

Defendants GDC and Board of Regents had a duty to exercise ordinary care, skill, and diligence in hiring, supervising, and retaining agents and employees to provide for the medical care of inmates in the custody of the GDC.

### 86.

Defendants GDC and Board of Regents failed to exercise ordinary care in hiring, supervising, and retaining qualified and credentialed medical professionals, and Defendant Dr. Nazaire in particular, and Defendants GDC and Board of Regents failed to exercise ordinary care in supervising medical practitioners in general in the women's prisons.

### 87.

As a direct and proximate result of the professional negligence of the GDC and

Board of Regents, and their agents and employees, Molli Fischer sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages.

## COUNT FOUR—STATE LAW GENERAL NEGLIGENCE CLAIMS AGAINST GDC AND BOARD OF REGENTS FOR NEGLIGENT TRAINING

88.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

89.

Defendants GDC and Board of Regents had a duty to exercise ordinary care, skill, and diligence in training correctional officers and medical personnel that would be responsible for the care and custody of inmates in the prison system.

90.

Defendants GDC and Board of Regents failed to exercise ordinary care in training correctional officers and medical personnel at Arrendale State Prison and Pulaski State Prison to provide for the care of inmates in the prison.

91.

As a direct and proximate result of the professional negligence of the GDC and

-33-

Board of Regents, and their agents and employees, Molli Fischer sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages.

## COUNT FIVE—CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS ADESHIGBIN, WEISE, GEE, FULLER, STONE, PAGE, KIEFER, ADDISON, WHITWORTH, STOVALL, ARNOLD, GOSS, GRIZZLE, JACKSON, LEWICKI, PRATHER, ROBINSON, AND TYLER, IN THEIR INDIVIDUAL CAPACITIES, FOR VIOLATION OF MOLLI FISCHER'S CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT

92.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

93.

At all times relevant to this action, Defendants Adeshigbin, Weise, Gee, Fuller, Stone, Page, Kiefer, Addison, Whitworth, Stovall, Arnold, Goss, Grizzle, Jackson, Lewicki, Prather, Robinson, and Tyler, were acting under color of state law.

94.

When Molli Fischer was at Arrendale State Prison, she had serious medical needs that were so obvious that even a layperson would have recognized them. In addition, Molli's medical needs were serious because a delay in treating her needs worsened her

-34-

conditions.

95.

Defendants Adeshigbin, Weise, Gee, Fuller, Stone, Kiefer, Page, Addison, Whitworth, Stovall, Arnold, Goss, Grizzle, Jackson, Lewicki, Prather, Robinson, and Tyler, were deliberately indifferent to Molli Fischer's serious medical needs while she was at Arrendale State Prison, in violation of Molli's clearly established rights under the Eighth Amendment to the United States Constitution.

96.

In particular, from May 21, 2014 until Molli left Arrendale State Prison in an ambulance on May 27, 2014, Defendants Adeshigbin, Weise, Gee, Fuller, Stone, Kiefer, Page, Addison, Whitworth, Stovall, Arnold, Goss, Grizzle, Jackson, Lewicki, Prather, Robinson, and Tyler, had encounters with Molli at various times as her medical condition deteriorated. At each time that these individual Defendants had encounters with Molli from May 21, 2014 through May 27, 2014, Molli had serious medical needs, and each of these Defendants failed to provide her with any medical care or they provided her with medical care that was so cursory and grossly inadequate as to amount to no care at all.

97.

As a direct and proximate result of these Defendants' deliberate indifference to Molli Fischer's serious medical needs, Molli sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical

expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and

James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award

of special and general damages.

## COUNT SIX—CLAIM UNDER 42 U.S.C. § 1983 AGAINST DEFENDANT DR. NAZAIRE, IN HIS INDIVIDUAL CAPACITY, FOR VIOLATION OF MOLLI FISCHER'S CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT

98.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they

were fully restated verbatim herein.

99.

At all times relevant to this action, Defendant Dr. Nazaire was acting under color

of state law.

100.

When Molli Fischer was at Pulaski State Prison, she had serious medical needs

that a physician mandated be treated, and her needs were so obvious that even a

layperson would have recognized them. In addition, Molli's medical needs were serious

because delay in treating the needs worsened her conditions.

101.

Defendant Nazaire was deliberately indifferent to Molli Fischer's serious medical

needs while she was at Pulaski State Prison, in violation of Molli's clearly established

rights under the Eighth Amendment to the United States Constitution.

-36-

102.

In particular, Dr. Nazaire was deliberately indifferent to Molli's serious medical needs in that he: (1) did not provide any care to Molli to prevent her from developing blood clots and pulmonary emboli, even though he knew, or any reasonable physician in his position would have known, that because of Molli's debilitated condition due to her recent serious illness and because of her past history of DVT, Molli was at an increased risk for developing blood clots and pulmonary emboli; (2) failed to provide Molli with dialysis three days a week, as ordered in her discharge from Northeast Georgia Medical Center; and (3) failed to request that Molli's dialysis catheter be evaluated for exchange/replacement prior to June 30, 2014, despite having knowledge that the catheter was not functioning properly.

103.

As a direct and proximate result of Defendant Dr. Nazaire's deliberate indifference to Molli Fischer's serious medical needs, Molli sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages.

## COUNT SEVEN—SUPERVISORY LIABILITY CLAIMS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS COMMISSIONER OWENS, DR. LEWIS, AND DR. NICHOLS, WARDEN SEABOLT, AND WARDEN GRANT, IN THEIR INDIVIDUAL CAPACITIES, FOR VIOLATION OF MOLLI FISCHER'S CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

104.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

105.

At all times relevant to this action, Defendants Commissioner Owens, Dr. Lewis, Dr. Nichols, Warden Seabolt, and Warden Grant were acting under color of state law.

106.

At all times relevant to this action, Defendant Commissioner Owens and/or Defendant Dr. Lewis were the GDC's final policy makers on matters related to the medical care of inmates in the custody of the GDC, including the hiring and training of medical personnel and correctional officers, and the development of standards, policies, and procedures regarding the evaluation, diagnosis, and treatment of inmates' medical conditions.

107.

At all times relevant to this action, Defendant Dr. Nichols was Georgia Correctional Healthcare's final policy maker on matters related to the medical care of inmates in the custody of the GDC, including the hiring and training of medical personnel, the development of standards, policies, and procedures regarding the

evaluation, diagnosis, and treatment of inmates' medical conditions, and ensuring that inmates received adequate medical care.

108.

At all times relevant to this action, Defendant Seabolt was the Warden at Arrendale State Prison, and Defendant Grant was the Warden at Pulaski State Prison.

109.

Prior to Molli Fischer's injuries, Defendants Commissioner Owens, Dr. Lewis, and Dr. Nichols had actual or constructive notice that there were widespread systemic deficiencies in the women's prison healthcare system in particular. These deficiencies included the customs of hiring and employing a significantly large percentage of medical personnel who had been previously sanctioned for providing inadequate medical care to patients, inadequately training and supervising medical personnel, inadequately training and supervising correctional officers, inadequate staffing, facilities, and equipment, and multiple instances of inadequate medical care provided to inmates, including inmate deaths as a result of inadequate medical care.

110.

Prior to Molli Fischer's injuries, Defendants Warden Seabolt and Warden Grant had actual or constructive notice that there were widespread systemic deficiencies in the medical care provided to inmates at Arrendale State Prison and Pulaski State Prison, respectively. These deficiencies included the customs of hiring and employing a significantly large percentage of medical personnel who had been previously sanctioned for providing inadequate medical care to patients, inadequately training and supervising

-39-

medical personnel, inadequately training and supervising correctional officers, inadequate staffing, facilities, and equipment, and multiple instances of inadequate medical care provided to inmates, including inmate deaths as a result of inadequate medical care.

111.

Prior to Molli Fischer's injuries, Defendants Commissioner Owens, Dr. Lewis, Dr. Nichols, Warden Seabolt, and Warden Grant failed to take steps to correct the widespread deficiencies in the women's prison healthcare system in that, among other things, they: (1) failed to develop and implement policies and procedures regarding the hiring and background checks of medical personnel who would be working in the state prisons; (2) failed to take steps to correct the policy, custom, or practice of hiring physicians with questionable backgrounds; (3) failed to take steps to ensure medical personnel working in the state prisons were competent and qualified; (4) failed to take steps to ensure that medical personnel working in the state prisons, particularly the women's prisons, were properly supervised; (4) failed to take steps to ensure that correctional officers were properly trained and supervised regarding inmate medical needs and care; (5) failed to take steps to ensure that the women's prison healthcare system had adequate staffing, facilities, and equipment; (6) failed to take steps to ensure that there were adequate standards, policies, and procedures for providing medical care to female inmates; (7) failed to take steps to ensure that female inmates in particular were receiving adequate medical care; and (8) failed to properly investigate other instances of inadequate medical care provided to inmates, including some that resulted in inmate deaths.

-40-

112.

Defendants Commissioner Owens, Dr. Lewis, Dr. Nichols, Warden Seabolt, and Warden Grant's failure to correct the widespread systemic deficiencies in the women's prison healthcare system constitutes a deliberate indifference to Molli Fischer's clearly established rights under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

113.

As a direct and proximate result of Defendants Commissioner Owens, Dr. Lewis, Dr. Nichols, Warden Seabolt, and Warden Grant's failure to correct the widespread systemic deficiencies in the women's prison healthcare system, Molli Fischer's clearly established rights under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution were violated.

114.

As a direct and proximate result of Defendants Commissioner Owens, Dr. Lewis, Dr. Nichols, Warden Seabolt, and Warden Grant's failure to correct the widespread systemic deficiencies in the women's prison healthcare system, Molli sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages.

## COUNT EIGHT—SUPERVISORY LIABILITY CLAIMS UNDER 42 U.S.C. § 1983 AGAINST DEFENDANTS RODGERS, FINN, DR. BAILEY, DR. NICHOLS, AND WARDEN GRANT, IN THEIR INDIVIDUAL CAPACITIES, FOR VIOLATION OF MOLLI FISCHER'S CONSTITUTIONAL RIGHTS UNDER THE EIGHTH AMENDMENT

115.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

116.

At all times relevant to this action, Defendants Rodgers, Finn, Dr. Bailey, Dr. Nichols, and Warden Grant were acting under color of state law.

117.

At all relevant times, Defendant Rodgers was the Health Services Administrator at Pulaski State Prison. In that role, Defendant Rodgers worked side by side with Dr. Nazaire and was responsible for supervising Dr. Nazaire. Defendant Rodgers was also responsible for ensuring that medical personnel at Pulaski State Prison were properly trained and competent, that there were adequate procedures regarding the evaluation, diagnosis, and treatment of inmates' medical conditions, and that inmates received adequate medical care.

118.

From the time Dr. Nazaire was hired until 2012, Defendant Dr. Bailey was the Statewide Medical Director for Georgia Correctional Healthcare. In that role, Defendant Dr. Bailey was Georgia Correctional Healthcare's final policy maker on matters related to the medical care of inmates in the custody of the GDC, including the hiring and

-42-

training of medical personnel, the development of standards, policies, and procedures regarding the evaluation, diagnosis, and treatment of inmates' medical conditions, and ensuring that inmates received adequate medical care. Defendant Dr. Bailey was also responsible for supervising Dr. Nazaire.

119.

At all relevant times, Defendant Finn was the Director of Human Resources for Georgia Correctional Healthcare. In that role, he was responsible for hiring employees and for the full credentialing process for new hires, which included reference checks, background checks, and verification of licensure.

120.

From 2012 to the present, Defendant Dr. Nichols has served as the Statewide Medical Director for Georgia Correctional Healthcare. In that role, Defendant Dr. Nichols was Georgia Correctional Healthcare's final policy maker on matters related to the medical care of inmates in the custody of the GDC, including the hiring and training of medical personnel, the development of standards, policies, and procedures regarding the evaluation, diagnosis, and treatment of inmates' medical conditions, and ensuring that inmates received adequate medical care. Defendant Dr. Nichols was also responsible for supervising Dr. Nazaire.

121.

At all relevant times, Defendant Grant was the Warden of Pulaski State Prison.

122.

Defendant Dr. Bailey and Defendant Finn were directly involved in the decision to

-43-

hire Dr. Nazaire as the Medical Director at Pulaski State Prison.

123.

Defendant Dr. Bailey and Defendant Finn were on actual or constructive notice that Dr. Nazaire was not competent to practice medicine when not under the direct supervision of another physician. Nevertheless, they hired Dr. Nazaire and put him in charge of the medical care at a large women's prison, where he was not under the direct supervision of another physician.

124.

During Dr. Nazaire's nine-year tenure as the Medical Director at Pulaski State Prison, Defendants Dr. Bailey, Warden Grant, Director Finn, Administrator Rodgers, and Dr. Nichols had actual or constructive notice that Dr. Nazaire was not providing adequate medical care to female inmates. This included actual or constructive notices of multiple instances of Dr. Nazaire failing to provide adequate medical care to inmates, including a significant number of deaths.

125.

Prior to Molli Fischer's injuries, Defendants Dr. Bailey, Warden Grant, Director Finn, Administrator Rodgers, and Dr. Nichols failed to take steps to ensure that Dr. Nazaire provided adequate medical care to inmates in that, among other things, they: (1) failed to ensure that Dr. Nazaire was properly credentialed and competent; (2) failed to ensure that Dr. Nazaire was properly trained and supervised; (3) failed to take steps to ensure that inmates under Dr. Nazaire's care were receiving adequate medical care; and (4) failed to properly investigate other instance of inadequate medical care provided to

inmates, including some that resulted in inmate deaths.

126.

Defendants Dr. Bailey, Warden Grant, Director Finn, Administrator Rodgers, and Dr. Nichols's failure to take steps to ensure that Dr. Nazaire provided adequate medical care to inmates constitutes a deliberate indifference to Molli Fischer's clearly established rights under the Eighth Amendment to the United States Constitution.

127.

As a direct and proximate result of Defendants Dr. Bailey, Warden Grant, Director Finn, Administrator Rodgers, and Dr. Nichols's failure to take steps to ensure that Dr. Nazaire provided adequate medical care to inmates, Molli Fischer's clearly established rights under the Eighth Amendment to the United States Constitution were violated.

128.

As a direct and proximate result of Defendants Dr. Bailey, Warden Grant, Director Finn, Administrator Rodgers, and Dr. Nichols's failure to take steps to ensure that Dr. Nazaire provided adequate medical care to inmates, Molli Fischer sustained catastrophic injuries that have left her in a persistent vegetative state. Molli has experienced extreme physical, mental, and emotional pain and suffering, mental and emotional distress, loss of enjoyment of life, and permanent disability. Molli has incurred, and will continue to incur, medical expenses and lost wages as a result of her injuries. As a result, Plaintiffs Angela and James Fischer, individually and as the guardians of Molli Fischer, are entitled to an award of special and general damages.

-45-

## COUNT NINE—CLAIM FOR PUNITIVE DAMAGES AGAINST ALL INDIVIDUAL DEFENDANTS

129.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

130.

The acts and omissions of the individually named Defendants showed willful misconduct, wantonness, and an entire want of care that raises the presumption of their conscious indifference to the consequences of their acts, conduct, and omissions. As a result, Plaintiffs are entitled to an award of punitive damages from the individually named Defendants that is sufficient to punish, penalize, and deter them.

## COUNT TEN—CLAIM FOR ATTORNEY'S FEES AND EXPENSES OF LITIGATION UNDER O.C.G.A. § 13-6-11

131.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

132.

Defendants have acted in bad faith, been unnecessarily and stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense. As a result, pursuant to O.C.G.A. § 13-6-11, Plaintiffs are entitled to an award of attorney's fees and expenses of litigation.

## COUNT ELEVEN—CLAIM FOR ATTORNEY'S FEES AND EXPENSES OF LITIGATION UNDER 42 U.S.C. § 1988 AGAINST INDIVIDUALLY NAMED DEFENDANTS

### 133.

Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if they were fully restated verbatim herein.

### 134.

Plaintiffs are entitled to their attorney's fees and costs of litigation from the individually named Defendants, jointly and severally, pursuant to 42 U.S.C. § 1988.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray and demand as follows:

1.  That Process and Summons issue, as provided by law, requiring Defendants to appear and answer Plaintiffs' Complaint;

2.  That service be had upon Defendants as provided by law;

3.  That the Court award and enter a judgment in favor of Plaintiffs and against Defendants for special and general damages in an amount to be proven at trial;

4.  That the Court award and enter a judgment in favor of Plaintiffs and against the individually named Defendants for punitive damages in an amount sufficient to punish and deter;

5.  That the Court award and enter a judgment in favor of Plaintiffs and against Defendants for attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11;

6.  That the Court award and enter a judgment in favor of Plaintiffs and against the individually named Defendants for attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 1988;

7.  That Plaintiffs have a trial by a jury as to all issues; and

8.  That Plaintiffs have such other and further relief as the Court may deem just and proper.

Respectfully Submitted, this 19th day of May, 2016.

WARSHAUER LAW GROUP, P.C.

Lyle Griffin Warshauer
Georgia Bar No. 171941
Michael E. Pérez
Georgia Bar No. 572127
*Attorneys for Plaintiffs*

2740 Bert Adams Road
Atlanta, GA 30339
T: 404.892.4900
F: 404.892.1020
lgw@warlawgroup.com
mep@warlawgroup.com

THE CHAMPION FIRM, P.C.

Darl H. Champion, Jr. *(by MEP w/ express permission)*
Georgia Bar No. 910007
*Attorneys for Plaintiffs*

2675 Paces Ferry Road SE
Suite 260
Atlanta, GA 30339
T: 404.596.8044
F: 404.671.9347
champ@thechampionfirm.com

LAW OFFICE OF SIDNEY WEINSTEIN

Sidney M. Weinstein *(by MEP w/ express permission)*
Georgia Bar No. 746418
*Attorneys for Plaintiffs*

Post Office Box 170513
97 Leslie Street, SE
Atlanta, GA 30317
T: 404.522.3108
F: 866.255.5008
sidweinsteinlaw@att.net

## CERTIFICATE OF COMPLIANCE WITH SERVICE REQUIREMENT OF O.C.G.A. § 50-21-35

Undersigned Plaintiffs' counsel, Michael E. Pérez, hereby certifies that he has mailed a copy of the Complaint, showing the date of filing, to the Attorney General, Sam Olens, at his usual office address, 40 Capitol Square, SW, Atlanta, Georgia 30334, by certified mail, return receipt requested.

This 19th day of May, 2016.

WARSHAUER LAW GROUP, P.C.

Lyle Griffin Warshauer
Georgia Bar No. 171941
Michael E. Pérez
Georgia Bar No. 572127
*Attorneys for Plaintiffs*

2740 Bert Adams Road
Atlanta, GA 30339
T: 404.892.4900
F: 404.892.1020
lgw@warlawgroup.com
mep@warlawgroup.com

# EXHIBIT A

SIDNEY M. WEINSTEIN
ATTORNEY AT LAW

P.O. BOX 170513
ATLANTA, GEORGIA 30317
SIDWEINSTEINLAW@ATT.NET
WWW.SIDWEINSTEINLAW.COM

VOICE: (404) 522-3103

FACSIMILE: (866) 255-5008

November 12, 2014

Risk Management Division
Georgia Department of Administrative Services
200 Piedmont Avenue, SE, #1804, West Tower
Atlanta, Georgia 30334-9010

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0505**

Georgia Department of Corrections
300 Patrol Road
Forsyth, Georgia 31029

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0512**

Commissioner Brian Owens
Georgia Department of Corrections
300 Patrol Road
Forsyth, Georgia 31029

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0529**

Ms. Kathleen Kennedy, Warden
Lee Arrendale State Prison
2023 Gainesville Hwy.
Alto, Georgia 30510

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0536**

Ms. Angela Grant, Warden
Pulaski State Prison
373 Upper River Road
Hawkinsville, Georgia 31036

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0543**

Mr. Holt, Warden
Phillips State Prison
2980 W. Rock Quarry Rd. NE
Buford, Georgia 30519

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0550**

Georgia Correctional Healthcare,
a Division of Georgia Regents University
Attn: Lee Little, Esq., General Counsel
1120 15th Street
Augusta, Georgia 30912

**Certified Mail, RRR**
**No. 7012 0470 0002 0700 0567**

EXHIBIT A

November 12, 2014
Page -2-

Re:     Ante-Litem Notice
        Mollianne Elizabeth Fischer, by and through her parent and legal guardian, Angela
        Fischer
        Dates Of Incident:     During Period beginning on or about May 20, 2014 through July
                               26, 2014
        Extent Of Injury:      Permanent Vegetative State With 30% Brain Function
        Claim:                 Negligence; Failure To Supervise; Failure To Adhere to Policies
                               and Procedures
        Locations Of
        Incident(s):           Lee Arrendale State Prison
                               2023 Gainesville Hwy.
                               Alto, Georgia 30510
                               -and-
                               Habersham Medical Center Hospital Annex and
                               Northeast Georgia Medical Center Hospital Annex

                               Pulaski State Prison
                               373 Upper River Road
                               Hawkinsville, Georgia 31036

                               Phillips State Prison,
                               Atlanta Medical Center Annex
                               303 Parkway Drive NE
                               Atlanta, Georgia 30312

Dear Sir/Madam:

        Please be advised that our firm represents Mollianne Elizabeth Fischer, by and through her
parent and legal guardian, Angela Fischer regarding claims against the Georgia Department of
Administrative Services, Georgia Department of Corrections, Lee Arrendale State Prison, Pulaski
State Prison, Phillips State Prison, and Georgia Correctional Healthcare, a Division of Georgia
Regents University. Please accept this correspondence as Mollianne Elizabeth Fischer's, by and
through her parent and legal guardian, Angela Fisher, *ante litem* notice, pursuant to O.C.G.A. § 50-
21-26, that she intends to pursue an action against Lee Arrendale State Prison, Pulaski State Prison,
Phillips State Prison, Georgia Correctional Healthcare, a Division of Georgia Regents University
and certain employees and agents of one or more of these facilities as a result of negligence,
medical negligence, failure to supervise, failure to properly care and provide for Mollianne
Elizabeth Fischer's medical condition, requirements, and treatment while in each such entities'
custody and control.

        Mollianne Elizabeth Fischer suffered physical and mental deterioration, extreme fever,
cardiac arrest, renal failure, and permanent brain damage resulting in a permanent vegetative state
as a result of the lack of proper supervision and assessment, denial of proper medical treatment,
misdiagnosis, violation of policies and procedures, medical negligence and negligence. Molli was

EXHIBIT A

November 12, 2014
Page -3-

denied proper medical care in light of her then current condition and medical history. Molli is currently bed ridden, unresponsive and survives with a feeding tube and artificial airway.

Pursuant to O.C.G.A. § 51-21-26, as counsel for Mollianne Elizabeth Fischer (and her guardians, heirs, successors, representatives, and assigns, if and as applicable), I am presenting her claim for general and special damages, both past and future, including but not limited to medical expenses, permanent disability, diminished earning capacity, lost wages, pain and suffering to include physical and emotional pain and suffering and all other damages allowed under Georgia law within the twelve-month period required by statute. While her damages continue to accrue and our investigation is ongoing, the claimant is seeking medical/special damages in an amount to yet be determined, but anticipated to be more than $5,000.00 but less than $1,000,000.00 plus general damages for physical and emotional pain and suffering in the amount of not less than $1,000,000.00. Please accept this correspondence as Ms. Fischer's *ante litem* notice, pursuant to such statute.

This *ante litem* is made with the intention of fulfilling the condition precedent to filing suit against the Department of Administrative Services, Georgia Department of Corrections, Lee Arrendale State Prison, Pulaski State Prison, Phillips State Prison, and Georgia Correctional Healthcare, a Division of Georgia Regents University, among others, for violation of state law. This notice is not intended to and does not, by operation of law or waiver, limit Ms. Fischer's rights to pursue claims for the violation of her rights under federal law or the United States Constitution.

Should you desire further information or wish to discuss this matter, please feel free to contact me.

Very truly yours,
Weinstein & Associates, LLC

Sidney M. Weinstein

cc:   Ronald Kaplan, Esq.

EXHIBIT A

**Top-right receipt:**

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GEORGIA DEPT. OF
CORRECTION'S
300 PATROL RD.
FORSYTH, GA 31029

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X   RECEIVED                    ☐ Agent
                                ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

STATE OFFICES SOUTH @ THAT COLLEGE.
MAILROOM

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7012 0470 0002 0700 0512

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MS. ANGELABRAY
AVGUSTA STATE PRISON
373 UPPER RIVER RD.
HAWKINSVILLE, GA 31036

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                               ☐ Agent
                                ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7012 0470 0002 0700 0543

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**Top-left receipt:**

COMPLETE THIS SECTION

- Items 1, 2, and 3. Also complete Restricted Delivery is desired.
- Print name and address on the reverse so we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Addressed to:

GEORGIA BRYSON
...
STA DEPT. OF
CORRECTION'S
PATROL ROAD
...TH, GA 31029

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X   RECEIVED                    ☐ Agent
                                ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

STATE OFFICES SOUTH @ THAT COLLEGE

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

Number
from service lab.   7012 0470 0002 0700 0529

811, February 2004    Domestic Return Receipt    102595-02-M-1540

**Bottom-left receipt:**

ER: COMPLETE THIS SECTION

- plete items 1, 2, and 3. Also complete 4 if Restricted Delivery is desired.
- your name and address on the reverse we can return the card to you.
- h this card to the back of the mailpiece, the front if space permits.

Addressed to:

KATHLEEN KENNEDY
HAROLD
CARRENDALE PRETSON
3 GROVESVILLE WAY
...GA 30510

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                               ☐ Agent
                                ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

Number
e from service lab.   7012 0470 0002 0700 0536

3811, February 2004    Domestic Return Receipt    102595-02-M-1540

EXHIBIT

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MANAGEMENT OASIS
A DEPT. OF
SVS.
1720 WEST TOWER
GA 30334-9040

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _WM_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
WILLIA ROGERS   NFM co.

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
7012 0470 0002 0700 0505

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GEORGIA COMMISSIONER
HEALTHCARE, A DIV. OF
GA REGENTS UNIV.
ATTN: LEE LITTLE, ESQ.
GENERAL COUNSEL
1120 15TH ST.
AUGUSTA, GA 30912

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Jim N G_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Jim N G

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
7012 0470 0002 0700 0567

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MR. HOLT HARGED
HATHAWAY STATE PRISON
2980 N. ROCK QUARRY RD.
BUFORD, GA 30519

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
M. Jacobs   11/13/12

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
7012 0470 0002 0700 0550

PS Form 3811, February 2004       Domestic Return Receipt       102595-02-M-1540

**EXHIBIT A**

# EXHIBIT B

STATE OF OHIO

COUNTY OF FRANKLIN

## AFFIDAVIT OF LAWRENCE H. MENDEL, D.O., FAACP, CCHP

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Lawrence H. Mendel, D.O., FAACP, CCHP, who after being duly sworn, deposes as follows:

1.

I am Lawrence H. Mendel, D.O., FAACP, CCHP, a competent adult over the age of eighteen laboring under no disabilities and otherwise competent to give this affidavit. I am a physician duly licensed to practice medicine in the State of Ohio. I currently serve as a Clinical Assistant Professor at Ohio University Heritage College of Osteopathic Medicine and am also a Collaborative Physician at Discover Health in New Albany, Ohio. I am also the Medical Director at Leavenworth Detention Center in Leavenworth, Kansas, where from 2011-2012, I served as a staff physician.

2.

I make this Affidavit for any lawful use or purpose.

3.

I have been a physician since 1982 following my graduation from Ohio University, and have been licensed since 1983. I did a rotating internship at Doctors Hospital in Columbus, Ohio from 1982-1983 and was a resident in Internal Medicine at Doctors Hospital in Columbus, Ohio

from 1983-1984. I hold a certification in Family Practice from the American Osteopathic Board of Family Practice, am a Certified Correctional Healthcare Professional and a Fellow in the American College of Correctional Physicians. I also served as an Accreditation Surveyor for the National Commission on Correctional Healthcare from 1995-2007. My credentials are more fully outlined in my Curriculum Vitae attached hereto as **Exhibit 1.**

4.

I am qualified as an expert by virtue of my knowledge, skill, experience, training and education regarding the issues raised in this affidavit. I am also qualified to give opinions regarding the acceptable standard of care and conduct expected of the professionals whose conduct is at issue in this affidavit, and I have instructed, taught and/or supervised nurses, nurse practitioners and other medical staff for at least three of the last five years both immediately preceding this affidavit and preceding the negligent acts I discuss herein with such frequency to establish an appropriate level of knowledge of assessing and caring for the conditions described herein. I have actively practiced in my area of specialty for at least three of the last five years both immediately preceding my signing of this affidavit, and preceding the negligent acts I discuss herein, with sufficient frequency to establish an appropriate knowledge in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the professionals whose conduct is at issue in this affidavit. Specifically, during three of the five years immediately preceding these events, I have regularly and routinely evaluated patients similar to Mollianne Fischer ("Molli Fischer"), including those exhibiting signs and symptoms of infection, and those requiring deep vein thrombosis ("DVT")

-2-

prophylaxis, with sufficient frequency to have an appropriate level of knowledge regarding the appropriate standard of medical care to be applied in the fact situation documented herein.

5.

I have reviewed certain medical records of Molli Fischer and the medical care provided by Molli Fischer's medical providers at Rabun County Jail, Arrendale State Prison ("Arrendale") and Pulaski State Prison ("Pulaski") from May 21, 2014 through June 30, 2014.

6.

The facts and opinions expressed in this affidavit are based on the contemporaneous entries made by certain healthcare providers of Molli Fischer in the previously referenced medical records, my training and education, and in the treatment of patients like Molli Fischer. The facts in this case upon which I base my opinions are of a type reasonably relied upon by experts in my particular field.

7.

All opinions expressed herein rise to a quality of more likely than not and are made to a reasonable degree of medical certainty.

8.

Among other things, my review of the documents and other information reveals that:

a.   On May 21, 2014 at approximately 7:50 a.m., Molli Fischer arrived at Arrendale after having been transferred from Rabun County Jail. She was 39 years of age.   On video she is seen as ambulating without difficulty from a transport vehicle.

-3-

b. During her diagnostic intake at Arrendale she was reported to have many health problems and she noted having chills.

c. On the morning of May 21, 2014, Molli Fischer was evaluated by Amber Stone, LPC, MHDO ("Counselor Stone"), who performed a mental health evaluation and noted that Molli was anxious because she had numerous medical issues. She also noted that Molli had a history of depression.

d. On May 23, 2014, Molli was evaluated in the medical unit at Arrendale by Alaba Adeshigbin, NP ("Nurse Adeshigbin"). Molli complained of having passed out twice and of having vomiting, dizziness, chills, and asthma. Nurse Adeshigbin ordered lab work to be done four days later and prescribed Reglan, a medication for reflux, to treat Molli's vomiting and dizziness, and an inhaler for asthma.

e. On May 24, 2014 at approximately 3:00 p.m. Molli Fischer was seen again in the clinic still complaining of multiple problems. Daniel Weise, RN ("Nurse Weise") documented this interaction and wrote that he suspected that Molli Fischer was faking her illness.

f. At 6:45 p.m. on May 24, 2014, Molli Fischer was assessed again by Nurse Weise for shortness of breath. Her blood pressure was 124/76, her temperature was 96 and her oxygen saturation was 95%, which is low oxygen saturation in a 39-year-old woman. Among Nurse Weise's instructions to Molli Fischer was to "not fake illness."

g. On May 25, 2014 at 6:15 a.m. Molli was found on the floor half dressed. She was told by Office Patrick Arnold ("Officer Arnold") to get up and get dressed, but Molli

-4-

said she could not because she was sick. Officer Arnold notified Lt. Elizabeth Gee ("Lt. Gee"), officer in charge, of the situation.

h. At or around 10:04 a.m. on May 25, 2014, Lt. Gee contacted Counselor Stone and informed her that Molli Fischer was laying on the floor and had urinated on herself. Lt. Gee also told Ms. Stone that Molli had been at medical on Friday, but they could find nothing wrong with her. Her urine was not tested for infection.

i. Sometime between 10:04 a.m. and 10:40 a.m, Nurse Hannah Fuller ("Nurse Fuller") examined Molli Fischer and found that she had a small amount of blood in her mouth and refused to answer orientation questions and officer instructions. Nurse Fuller reported her findings to Counselor Stone who determined that Molli did not have a mental health issue and should be sent to lockdown for failure to follow instructions.

j. Sometime between 10:04 a.m. and 10:40 a.m., Nurse Karla Sue Kiefer ("Nurse Kiefer") was called to assess Molli prior to force being used to move her. Nurse Kiefer noted that Molli's skin was warm and dry, and her respirations unlabored.

k. On May 25, 2014 at 10:40 a.m. force was used to move Molli. At various times Molli was lifted with her arms behind her back almost over her head, was placed on a rolling dolly and was thrown to the ground. Molli was moved to a segregation unit at or about 10:40 a.m.

l. After the use of force, Molli was reassessed by Nurse Kiefer and she noted that there was no change in Molli's status. Molli's oxygen saturation was recorded to be 94%, which is abnormal in a 39-year-old woman.

-5-

m. At or around 11:28 a.m. on May 25, 2014, a Nurse Page at Arrendale spoke on the telephone with Nurse Toni Maranda Frankum-Shook ("Nurse Frankum-Shook") at Rabun County Jail to ask about Molli Fischer's demeanor when she was at Rabun County Jail. Nurse Frankum-Shook informed Nurse Page that although Molli had problems cooperating early in her incarceration, she never experienced incontinence while at Rabun County Jail. Nurse Frankkum-Shook offered to send Molli Fischer's medical records immediately or take them to the jail, but Nurse Page refused that offer.

n. At approximately 6:07 p.m. on May 25, 2014, Kristi Addison, LPN reviewed the placement in segregation and noted that there were no medical contraindications to Molli's placement in segregation.

o. On May 26, 2014, at 7:35 p.m., Lt. Russell reported to Yhana L. Whitworth, RN ("Nurse Whitworth") that Molli had not eaten in 2 days, was laying on the floor, was not bathing and was verbally unresponsive. Her behavior was noted as "not unusual" because she had been written up for feigning illness before.

p. On May 27, 2014 at approximately 5:05 a.m., Lt. Russell called Nurse Whitworth and said Molli had defecated and smeared feces on her arms. Nurse Whitworth stated that she would report this incident to Rhonda E. Stovall, RN ("Nurse Stovall") to discus with Molli's treatment team.

q. At approximately 9:30 a.m. Molli was received in the trauma room and her vitals were: blood pressure of 118/62, pulse 90, respirations 26, 02 at 82%. She was given

oxygen via a nasal cannula at 2 liters, then increased to 3 liters, but it was noted that her oxygen saturation levels were not increasing.

r.  On May 27, 2014 at approximately 9:30 a.m. Molli Fischer was examined for the first time by a physician, Dr. Bond, who diagnosed her with acute respiratory distress, possible aspiration and/or pulmonary edema.

s.  At 10:02 a.m., EMS arrived and took Molli to Habersham Medical Center.

t.  At approximately 10:56 a.m., Molli was evaluated at Habersham Medical Center's emergency room by Dr. James Hamilton. Dr. Hamilton documented that Molli did not respond except by opening her eyes and moaning to sternal rub. CT scans showed mild brain swelling, pneumonia and inflammatory changes around her pancreas. There was also coffee ground emesis on her face and in her mouth. She was diagnosed with septic shock which required numerous medications to maintain a living, survivable blood pressure.

u.  Molli was transferred to Northeast Georgia Medical Center ("NEGMC") at approximately 4:40 p.m. on May 27th and was in a coma.

v.  On June 2, 2014, Molli woke from her coma.

w.  Molli was at NEGMC from May 27 through June 17, 2014. While their, she was treated for pneumonia, sepsis, renal failure (dialysis initiated), urinary tract infection, anemia, pancreatitis and abnormal findings on a colonoscopy.

-7-

x. Once Molli's hemoglobin stabilized, it was determined she was stable for discharge to a prison where she could receive dialysis three days per week. Prior to her incarceration, Molli had never had kidney failure or been on dialysis.

y. On June 17, 2014, Molli was transferred to Pulaski Prison, a facility that has a dialysis unit, so that she could receive dialysis three days per week. She was housed in the infirmary and she reported, and it was noted, that she couldn't walk or stand. Records indicate that she required the use of a bedpan.

z. On June 18, 2014, it was noted that Molli had a pressure ulcer on her left heel and her foot was resting up on a pillow.

aa. On or about June 19, 2014, Dr. Yvon Nazaire requested a physical therapy consult and noted in Molli's medical history that she had generalized weakness and diagnosed her with lower extremity weakness.

bb. On or around June 24, 2014, Dr. Nazaire received a call at Pulaski from a gastroenterologist reporting that the final pathology report for a colon biopsy performed on Molli while she was admitted to NEGMC was positive for Crohn's Colitis.

cc. On or around June 30, 2014, it is documented that Molli went into cardiorespiratory arrest while receiving dialysis at Pulaski, although there is no record of Molli ever receiving dialysis while housed at Pulaski State Prison. Dr. Nazaire documented that he performed Cardiopulmonary Resuscitation ("CPR") on Molli Fischer and that she

-8-

had been doing okay until her cardiac arrest, except for complete weakness prior to her cardiorespiratory arrest.

dd. On or around June 30, 2014, Molli went to Taylor County Medical Center via ambulance. After a brief evaluation, Molli was transferred to Atlanta Medical Center via ambulance and was diagnosed as having suffered from a pulmonary embolus and hypoxic ischemic encephalopathy.

ee. Since June 30, 2014, Molli has been in a persistent vegetative state.

## OPINIONS

### 9.

The care given to Molli Fischer by the staff and medical personnel at Arrendale fell below the standard of minimum care and treatment required of prison staff and medical personnel under like circumstances and similar surroundings by failing to recognize and respond to signs and symptoms in Molli's condition that indicated she had an infection.

### 10.

More specifically, the care given to Molli Fischer by Nurse Adeshigbin on or around May 23, 2014, fell below the standard of minimum care and treatment required of a nurse practitioner in at least the following respects: (1) failing to recognize that Molli's complaints of chills, dizziness, passing out and vomiting, in addition to her elevated heart rate of 113 were signs and symptoms of possible dehydration and infection; and (2) failing to notify a doctor of

Molli's abnormal vital signs and symptoms so that she could be further evaluated and receive appropriate treatment.

11.

More specifically, the care given to Molli Fischer by Nurse Weise on or around May 24, 2014, fell below the standard of minimum care and treatment required of an registered nurse in at least the following respects: (1) failing to recognize that Molli's oxygen saturation of 95% was abnormal for a thirty-nine-year-old woman and in combination with Molli's elevated heart rate of 96 and her complaint of being short of breath, these were signs of infection; and (2) failing to notify a doctor of Molli's abnormal vital signs and symptoms of infection so that she could be further evaluated and receive appropriate treatment.

12.

More specifically, the care given to Molli Fischer by Nurse Kiefer on or around May 25, 2014 fell below the standard of minimum care and treatment required of a registered nurse in at least the following respects: (1) failing to recognize that Molli's oxygen saturation of 94% was abnormal for a thirty-nine-year-old woman and in combination with Molli's inability to stand up were signs of infection; (2) failing to notify a doctor of Molli's abnormal vital signs and symptoms of infection so that she could be further evaluated and receive appropriate treatment; and (3) allowing Molli to be transferred to a lockdown unit when Molli was demonstrating signs and symptoms of infection.

-10-

13.

More specifically, the care given to Molli Fischer on or around May 25, 2014 by Nurse Fuller fell below the standard of minimum care and treatment required of a mental health nurse or in at least the following respects: (1) failing to recognize that incontinence, tongue biting and failure to answer "orientation questions," were signs of a medical illness; (2) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment; and (3) allowing Molli to be transferred to a lockdown cell before being evaluated by a physician.

14.

More specifically, the care given to Molli Fischer on or around May 25, 2014 by Counselor Stone fell below the standard of minimum care and treatment required of a mental health counselor in at least the following respects: (1) failing to recognize that incontinence, tongue biting and failure to answer "orientation questions," were signs of a medical illness; (2) failing to personally examine Molli when she heard of her abnormal symptoms; (3) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment; and (4) allowing Molli to be transferred to a lockdown cell before being evaluated by a physician.

15.

More specifically, the care given to Molli Fischer on or around May 25, 2014 by Nurse Page fell below the standard of minimum care and treatment required of a mental health

-11-

counselor in at least the following respects: (1) failing to recognize that incontinence was a sign of a medical illness; and (2) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment.

16.

More specifically, the care given to Molli Fischer on or around 6:07pm on May 25, 2014 by Nurse Addison, fell below the standard of minimum care and treatment required of a nurse in at least the following respects: (1) failing to recognize, while performing her segregation record review of Molli's records, that Molli was exhibiting signs and symptoms of a serious medical condition which were medical contraindications for placement in disciplinary isolation; (2) failing to notify a doctor of Molli's abnormal signs and symptoms so that she could be further evaluated and receive appropriate treatment; and (3) allowing Molli to remain in an isolation cell without being evaluated by a physician.

17.

More specifically, the care given to Molli Fischer on May 26 and May 27, 2014 by Nurse Whitworth fell below the standard of minimum care and treatment required of a nurse in at least the following respects: (1) failing to recognize that not eating for two days and being verbally unresponsive were signs of illness; (2) failing to recognize that Molli's absence of oral intake could lead to dehydration; (3) failing to recognize that incontinence is a symptom of serious illness; (4) failing to personally examine Molli when she heard of her abnormal symptoms; and

-12-

(5) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment.

18.

More specifically, the care given to Molli Fischer on or around May 27, 2014 by Nurse Stovall, fell below the standard of minimum care and treatment required of a nurse in at least the following respects: (1) failing to recognize that being incontinent is a symptom of serious illness; (2) failing to personally examine Molli when she heard of her abnormal symptoms; and (3) failing to notify a doctor of Molli's abnormal symptoms so that she could be further evaluated and receive appropriate treatment.

19.

More specifically, the care given to Molli Fischer upon her admission medical examination to Pulaski State Prison on or around June 19, 2014, by Dr. Nazaire, fell below the standard of minimum care and treatment required of a physician in at least the following respects: (1) failing to recognize that because of Molli's debilitated condition due to her recent serious illness and because of her past history of DVT, Molli was at an increased risk for developing blood clots and pulmonary emboli; (2) failing to place Molli on appropriate DVT prophylaxis; (3) failing to comply with the order to provide dialysis, as there is no documentation of dialysis, for Molli Fischer three days per week as ordered in her discharge from NEGMC; and (4) failing to request that Molli's dialysis catheter be evaluated for

-13-

exchange/replacement prior to June 30, 2014 despite having knowledge that the catheter was not functioning properly.

20.

Had the aforementioned deviations from the applicable standards of care not occurred, Molli Fischer would have been diagnosed with an infectious process prior to May 27, 2014 and appropriately treated. Had the aforementioned deviations from the applicable standards of care not occurred, on or around June 19, 2014, Molli Fischer would have received the appropriate DVT prophylaxis and would not have suffered the injuries and insults which have left her in a persistent vegetative state.

21.

I have not expressed all of my opinions in this affidavit; as I understand Georgia law, I am only required to state one negligent act of each named defendant.

22.

All of the opinions I have expressed in this affidavit constitute my opinions at this time and are based on the information which I have been given. I reserve the right to change or modify my opinions if further information is received which impacts on the opinions I have given.

-14-

FURTHER AFFIANT SAYETH NOT.

Lawrence H. Mendel, D.O., FAACP, CCHP

Sworn to and subscribed
before me this _17_ day of

_____ , 2016.

Notary Public
My commission expires:

NOTARIAL SEAL
STATE OF OHIO

LINDA R. MENDEL
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

-15-

# EXHIBIT B-1

## Curriculum Vitae
### Lawrence H. Mendel, D.O., FACCP, CCHP
1255 N. Hamilton Road, #71
Columbus, Ohio   43230

**I. Education:**

B.A., Kent State University, 1976

D.O., Ohio University, 1982

**II. Postdoctoral Training:**

Rotating Internship, Doctors Hospital,
Columbus, Ohio, 1982-3
Internal Medicine Resident, Doctors Hospital, Columbus,
Ohio 1983-4

**III. Work Experience:**

Discover Health, Oversight and Collaborating Physician
March 2016 to present

Clinical Assistant Professor, Ohio University Heritage
College of Osteopathic Medicine, May 2015 to present

Medical Director, March 2012 to present
Staff physician, July 2011 through March 2012
Leavenworth Detention Center
Leavenworth, Kansas

Clinical Assistant Professor, Ohio State University,
Department of Family Medicine, October 2010 to October
2013

Urgent care and Telemedicine physician for Ohio
Department of Rehabilitation and Correction
September 2010 to November 2014

Assistant Medical Director, Ohio Department of
Rehabilitation and Correction, Columbus, Ohio
November 2007 through January 2011

Acting Medical Director, Ohio Department of
Rehabilitation and Correction, Columbus, Ohio
November 2006 to November 2007

Staff Physician, Wholehealth Management Scotts Inc.,
Marysville, Ohio, and Longaberger Inc, Frazeysburg, Ohio,
July 2006 to January 2007

Staff Physician, Ohio Reformatory for Women, Marysville,
Ohio.  May 2005 to July 2005, temporary contract to fill
unanticipated vacancy

Consultant, Jackie Moore and Associates, July 2004 to
February 2007

EXHIBIT B-1

**Curriculum Vitae**
**Lawrence H. Mendel, D.O., FACCP, CCHP**
**Page Two**

Clinical Assistant Professor, Ohio State University, Staff Physician at Franklin County Jail, Columbus Ohio. Under contract with Ohio State University. November 2001 to June 2004

Consultant on operational issues and cost containment strategies, North Carolina Department of Corrections, 2001-2002

Consultant on accreditation and operational issues, Franklin County Jail, Columbus Ohio, July-September 2001

Acting Regional Medical Director and consultant, Central Region, New York, January and February 2000

Medical Monitor under Federal Court consent decree, Northeast Ohio Correctional Center, Youngstown Ohio, December 1999-June 2001

Telemedicine Consultant, September 1999 to February 2007

Medical Director, Ohio Department of Rehabilitation and Correction, 1988 to September 1999

Emergency Medicine, Medcenter Hospital, Marion, Ohio, 1986-8

Emergency Medicine, Doctors Hospital, Columbus, Ohio, 1985-6

Emergency Medicine, Knox Community Hospital, Mt. Vernon, Ohio 1984-5

Emergency Medicine, Department Director, Galion Community Hospital, Galion, Ohio 1984-5

Emergency Medicine (parttime),

Doctors Hospital, Nelsonville, Ohio, 1983-4

IV. Memberships:

Academy of Correctional Health Professionals

American Osteopathic Association

EXHIBIT B-1

Curriculum Vitae
Lawrence H. Mendel, D.O., FACCP, CCHP
Page Three

American College of Osteopathic Family Physicians

American College of Correctional Physicians

**V. Certifications**

Family Practice, American Osteopathic Board of Family Practice, expires 2023

Certified Correctional Healthcare Professional, National Commission on Correctional Healthcare

Fellow, American College of Correctional Physicians, 2004 to present

ACLS Instructor, October 2007 to 2013, ACLS Provider 2013 to present. Expires July 2017

**VI. Correctional healthcare training:** (chronological order)

Conference participant, National Conference on Correctional Healthcare, 1988-2001, 2003-16

Conference participant, American Correctional Association Winter 1989, Winter 1991, Summer 1995, 1996, 1998, 2000, 2004

Conference participant, American Correctional Health Services Association, 1989, 1991, 1992, 1993, 1999, 2000, 2005

Accreditation Surveyor, National Commission on Correctional Healthcare 1995-2007

**VII. Correctional healthcare technology projects:**

Clinical Director, Ohio State University-Ohio Corrections telemedicine program. The program was initiated in 1994 and is currently ranked as one of the largest telemedicine programs in the U.S.

Project Manager-NIJ sponsored correctional healthcare smartcard demonstration project in conjunction with Battelle Memorial Institute. Grant received 1997, program became operational in April 1998.

Consultant on telemedicine to Georgia Department of Corrections, 1998, Correctional Medical Services 1999-

EXHIBIT B-1

Curriculum Vitae
Lawrence H. Mendel, D.O., FACCP, CCHP
Page Four

2002  Project plans completed for state prison systems in West Virginia, Minnesota, New Jersey, and New Mexico

**VIII. Conference Presentations**

National Conference on Correctional Healthcare, New Trends in Telemedicine, An Evolving Technoology, October 2013

National Conference on Correctional Healthcare, Involuntary Medical Treatment, October 2012

National Conference on Correctional Healthcare, Mortality Review: Transforming Lessons Learned Into System Change, October 2010

American Telemedicine Association, Tampa Florida, May 2004. Correctional Telemedicine Workshop.

National Institute of Corrections, Telemedicine and Emerging Technology, Longmont Colorado, July 2002

Columbus Academy of Osteopathic Medicine, "Telemedicine, Past, Present and Future", Dublin Ohio, April 2002

Telemedicine World 1999, Galveston Texas "Developing a business case for Telemedicine", April 1999

American Correctional Health Services Association, 1992, 1999, 2000

National Conference on Correctional Healthcare, 1991, 1998, 2010

Gulf Coast Conference on Correctional Healthcare, Galveston Texas, 1990, "Quality Assurance in Correctional Healthcare"

**IX. Publications**

"Involuntary Medical Treatment in the Correctional Setting", **Correctional Health Care Report**, Volume 14, No. 5, July 2013  Civic Research Institute

"Evaluating Options for Bringing Imaging Procedures in House", **Correctional Health Care Report**, Volume 11, No. 5, July 2010  Civic Research Institute

EXHIBIT B-1

Curriculum Vitae
Lawrence H. Mendel, D.O., FACCP, CCHP
Page Five

"Technology in Correctional Medicine", chapter in Clinical Practice in Correctional Medicine, 2nd Edition, Mosby, Elsevier, 2006, Michael Puisis, D.O., Editor,

"Understanding Cost Issues in Telemedicine", Desmoteric News, Society of Correctional Physicians, 1999

"Correctional Telemedicine", chapter in Management and Administration of Correctional Health Care, Jacqueline Moore Editor, Civic Research Institute, 2003

"Disaster Planning", Correctional Health Care Report, Volume 3, No. 2, January 2002, Civic Research Institute

EXHIBIT B-1