**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| ANGELA & JAMES FISCHER, | : | CIVIL ACTION NO. |
| Individually and as the Guardians of | : | 2:16-CV-00143-RWS-JCF |
| Mollianne Fischer, an Adult Ward, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GA. DEP'T OF CORRS., et al., | : | PRISONER CIVIL ACTION |
| Defendants. | : | 42 U.S.C. § 1983 |

**ORDER**

Plaintiffs allege that Defendants — officials of the Georgia Department of

Corrections ("GDC"), Georgia Correctional Healthcare ("GCH"), Lee Arrendale

State Prison ("Arrendale") and Pulaski State Prison ("Pulaski") — were deliberately

indifferent to the serious medical needs of their daughter, Mollianne Fischer

("Molli"). Plaintiffs seek damages "arising out of the severe injuries their daughter

sustained when she did not receive proper medical care when she was in the custody

of the [GDC] at [Arrendale] and [Pulaski,]" and they allege that "[a]s a result of

receiving inadequate medical care, and in some instances no medical care at all,

Molli sustained catastrophic injuries that have left her in a persistent vegetative

state." (Compl. ¶ 1). Several of the original 29 Defendants have filed motions,

either jointly or separately, to dismiss the claims against them.

The Magistrate Judge's Report and Recommendation ("Report") recommends

that the Court do the following:

1.  **GRANT** Plaintiffs' Consent Motion To Dismiss Defendants (Doc. 43), and
    dismiss the following Defendants — Kathy Seabolt, Danny Finn, Elizabeth
    Gee, Patrick Arnold, Chelsea Goss, Justin Grizzle, Wayman Jackson, Steven
    Lewicki, Crystal Tyler, and Michael Robinson;

2.  **DISMISS AS MOOT** Defendant Crystal Tyler's Motion For Judgment On
    The Pleadings (Doc. 37);

3.  **GRANT** Defendant Amber Stone's Motion For Judgment On The Pleadings
    (Doc. 39) and **DISMISS** Defendant Stone;

4.  **DISMISS** Robert Prather based on the Plaintiffs' failure to respond to the
    suggestion on the record of Prather's death (*see* Doc. 6);

5.  **GRANT IN PART** the State Defendants' Motion For Judgment On The
    Pleadings (Doc. 32) and **DISMISS** Defendants Brian Owens, Alaba
    Adeshigbin and Angela Grant; and **DENY** the remainder of the State
    Defendants' Motion; and

6.  **DENY** Defendant Dr. Billy Nichols' Motion To Dismiss (Doc. 41).

(Doc. 49 at 57-58).

Adopting these recommendations would allow Plaintiffs to pursue their claims

against the following Defendants who have sought dismissal: (1) six Arrendale

nurses — Daniel Weise, Hannah Fuller, Page Elliott, Karla Sue Kiefer, Kristi

Addison and Yhana Whitworth ("the Arrendale Nurses"); (2) supervisory officials

2

Dr. Sharon Lewis, the GDC Medical Director; Dr. Edward Bailey, a former GCH Medical Director; and Betty Rodgers, the Pulaski Health Services Administrator ("the State Defendant Supervisors"); and (3) Dr. Billy Nichols, the current GCH Medical Director.[1] The Arrendale Nurses and the State Defendant Supervisors have jointly filed objections to the Report (Doc. 51); and Dr. Nichols has separately filed his own objections (Doc. 52).

In accordance with 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a *de novo* review of those portions of the Report to which the foregoing Defendants object, and has reviewed the remainder of the Report for plain error.[2] *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Report explains the standard of review used to assess both a motion to dismiss and a motion for judgment on the pleadings:

"After the pleadings are closed—but early enough not to delay trial—a

---

[1]The two state agency Defendants — the GDC and the Board of Regents of the University System of Georgia for GCH — have not sought dismissal; and Dr. Yvon Nazaire, a former Pulaski medical doctor, has yet to be served with Plaintiffs' complaint.

[2]The Magistrate Judge has summarized at length Plaintiffs' factual allegations and the parties' arguments. (*See* Doc. 49 at 7-11, 18-38 (discussing the claims against the Arrendale Nurses); *id.* at 38-39, 42-48, 49-57 (discussing the claims against the supervisory officials, including Dr. Nichols).

3

party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standards that govern a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Johnson v. Midland Funding*, LLC, 823 F.3d 1334, 1337 (11th Cir. 2016). Just as a complaint cannot survive a motion to dismiss when it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted), "[j]udgment on the pleadings is appropriate when no issues of material fact exist, and the movant is entitled to judgment as a matter of law[,]" *Johnson*, 823 F.3d at 1337 (internal quotations omitted). But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

(Doc. 49 at 6).

## I.    The Arrendale Nurses' Objections

The Report discusses the Plaintiffs' claims against the Arrendale Nurses as

follows:

Molli's condition rapidly deteriorated during her six-day stay at Arrendale, until she slipped into a coma shortly after being transported to a nearby hospital. It is at least plausible, therefore, that she had a serious medical need while housed at Arrendale. It may be that the symptoms that Molli presented to the Arrendale nurses, individually or collectively, were insufficient to allow a factfinder — after a full development of the evidence, through discovery — to find it more likely than not that any of the nurses is liable for failing to take steps to diagnose or treat Molli's condition. But the issue here is a much narrower one — whether Plaintiffs have *plausibly alleged* sufficient facts to enable a factfinder to "conclude that [each Arrendale nurse was] deliberately indifferent to [Molli's] medical need for further diagnosis

4

of and treatment for the [symptoms she] was experiencing." *See McElligott v. Foley*, 182 F.3d 1248, 1256-57 (11th Cir. 1999).

The Arrendale nurses argue that they cannot be held liable, collectively, for not being aware of all of the symptoms that Molli presented to different individual nurses at different times. (*See, e.g.,* Doc. 32-1 at 14). But "[c]hoosing to deliberately disregard, without any investigation or inquiry, everything any inmate says amounts to willful blindness." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1328 (11th Cir. 2007) ("[A] party that willfully blinds itself to a fact . . . can be charged with constructive knowledge of that fact." (internal quotations omitted)).   "When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990). And . . . "[w]hether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Goebert*, 510 F.3d at 1327 (internal quotations omitted).   Even when, for example, a physician's assistant has examined an inmate plaintiff on multiple occasions and has provided the inmate with medications upon request, a "jury properly could find" that his failure to provide further medical attention — or "get [him] to a doctor" for treatment of his "deteriorating condition" — "constituted deliberate indifference." *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988).

. . . .

[The Arrendale Nurses'] contact with Molli occurred on May 24 through May 26, during which time it became more and more obvious, or should have become so to trained medical personnel, that Molli was in acute distress and required medical attention. But she received none until the morning of May 27, by which time it was too late, apparently,

> to prevent her from slipping into a coma later that day. Plaintiffs have
> at least *plausibly alleged* that each of these six Defendants was
> deliberately indifferent to Molli's serious medical needs. And because
> it is clearly established that such indifference violates the Eighth
> Amendment prohibition against cruel and unusual punishment, these
> Defendants are not entitled to judgment on the pleadings based on their
> asserted qualified immunity.

(Doc. 49 at 24-27 (citations altered)). The Report states that "[i]t is plausible that by

May 25, the deterioration in Molli's condition was sufficient to put each of the

medical providers with whom Molli had contact—until she was taken to Habersham

just two days later [i.e., 5 of the 6 Arrendale Nurses] — on notice that she needed

further medical attention, but none was provided by any of them . . . ." (*Id.* at 31).

In their objections, the Arrendale Nurses reiterate their assertion that

Plaintiffs' claims against them depend upon an impermissible double inference —

first from the facts that the Plaintiffs have pled to other facts that they have not pled,

and then from those unpled facts to an "inference of liability." (Doc. 51 at 2-3).

> In particular, whether any of the nurse Defendants had information
> regarding [Molli's] medical history or prior encounters is a predicate
> fact that must actually be pled, not inferred. It is from that pled fact that
> one may plausibly infer whether the nurse Defendants were deliberately
> indifferent to [Molli's] current needs, in light of her past history. The
> Complaint, however, does not plead this fact as to any nurse Defendant.
> Rather, the Complaint simply pleads each nurse's actions in isolation,
> which does not indicate the nurse knew anything more than what was
> presented to her.

6

(*Id.* at 3 (footnote omitted)). The Arrendale Nurses object that "in order to know that [Molli] was, in fact, deteriorating, the nurses would need to have known what [her] past status was. [They] object to the [Report's] conclusion that the existence of this background knowledge can be inferred from other facts, rather than pled directly." (*Id.* at 3-4).

> There are no allegations that any single nurse Defendant was actually aware that [Molli's] condition was deteriorating or even changing at all. Rather, such facts could only be implied from other facts, which results in two layers of plausible inferences instead of one. Defendants submit that this fails to meet the pleading standards under *Twombly-Iqbal* and object[] to the R&R's conclusions.

(*Id.* at 4).

The Arrendale Nurses cite *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012), to the effect that "[a] plaintiff must plead factual allegations for each essential element of his or her claim." (Doc. 51 at 2 (internal quotations omitted)). But, in that very case, the Eleventh Circuit cited *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010), for the proposition that "[c]omplaints . . . must now contain either direct *or inferential allegations* respecting all the material elements necessary to sustain a recovery under some viable legal theory." *GeorgiaCarry.Org,* 687 F.3d at 1254 (emphasis added) (internal quotations omitted).

7

The *Randall* court cited *Bryson v. Gonzales*, 534 F.3d 1282 (10th Cir. 2008), to support that proposition. *Randall*, 610 F.3d at 707 n.2. The *Bryson* court, in turn, stated: "If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied th[e *Twombly* pleading] requirement. If it omits some necessary facts, however, it may still suffice *so long as the court can plausibly infer the necessary unarticulated assumptions*." *Bryson*, 534 F.3d at 1286 (emphasis added). In other words, a plaintiff may satisfy the *Twombly-Iqbal* pleading requirement by alleging facts from which a court may infer other facts — "necessary unarticulated assumptions," *id.* — to support a required element of the plaintiff's claim.

In any event, it appears that Plaintiffs have alleged all the facts necessary to support their deliberate indifference claims against the Arrendale Nurses. With respect to Nurses Fuller, Kiefer, Elliott and Addison, in particular, the Report states:

> *Based on their actions*, it is plausible that each of them was aware of much if not all of Molli's medical history since entering Arrendale, else they would have been in no position to perform the assessments and actions, and to reach the conclusions, that they did. If they were not aware of Molli's medical history, they should have been, and it is plausible that by ignoring Molli's medical history, each of them was willfully blind to her condition. Either way, it is plausible that each of them was deliberately indifferent to Molli's deteriorating condition and is potentially liable here.

(Doc. 49 at 35 (emphasis added)).

8

As noted in the Report, the Plaintiffs' allegations reveal a significant amount of consultation among the Arrendale Nurses regarding Molli's condition — in particular, to determine whether she was healthy enough to be locked down for insubordination — including a call to her previous place of confinement. (*See* Report at 8 (Nurse Fuller consulted with Counselor Stone); *id.* at 8 (Nurse Elliott called a nurse at the Rabun County Jail); *id.* at 9 (Nurse Addison reviewed Molli's status)). But none of the Arrendale Nurses called for a doctor to examine Molli until her condition was so severe that she slipped into a coma soon thereafter.

Given Molli's symptoms during the days just prior to her coma, the Report's reference to willful blindness — that is, to the proposition that if the Arrendale Nurses were not subjectively aware of Molli's serious medical needs, they should have been — is sound. On the other hand, the Arrendale Nurses' objection to the Report's reference to Molli's "deteriorating condition" — an objection based on the lack of any allegation that any individual nurse was, or could have been, aware of that deterioration — is not well-taken. The Report's use of the word "deteriorating" derives from the plausible inference that by the time each of the Arrendale Nurses interacted with Molli, her condition had *already* deteriorated to the point that it was incumbent upon each nurse to provide medical care to Molli, and none of the nurses

9

did so until the very day when Molli slipped into her first coma.

Under these circumstances, the Court will not dismiss the Arrendale Nurses without first giving Plaintiffs the opportunity to conduct discovery. Allowing Plaintiffs' claims to proceed against the Arrendale Nurses does not foreclose the possibility that after discovery is complete, one or more of the Nurses will be entitled to summary judgment. But none of them is entitled to judgment on the pleadings. Their objections are **OVERRULED**.

## II.   **The State Defendant Supervisors' Objections**

Dr. Lewis objects, with respect to Plaintiffs' Count Seven claims (*see* Report at 38-39, 42-43), that the Report "relies primarily upon . . . the Kanto Report, which reported 'systemic issues' and 'material weaknesses' in female prison healthcare in December 2015, eighteen months after the subject incident[,]" but "this conflates the *Twombly-Iqbal* distinction between pled facts and plausible inferences of liability." (Doc. 51 at 5).

> The existence of unconstitutional conditions in 2014, eighteen months prior to the Kanto Report, is a fact that must be pled in order to support a plausible inference that Dr. Lewis was deliberately indifferent to those unconstitutional conditions. The Complaint, however, does not plead this fact. It requires a factual inference to get from infirm conditions in 2015 to infirm conditions in 2014, but such supporting facts should be pled, not inferred. Moreover, the R&R does not address

10

whether the Kanto Report's citation of "issues" and "weaknesses" is sufficient to place any Defendant on notice of the type of "obvious, flagrant" and "rampant" misconduct required for an Eighth Amendment violation.

(*Id.* (footnote omitted).

Dr. Bailey and Rogers object to the Report's conclusion regarding Plaintiffs' Count Eight claims (*see* Report at 51-52, 56-57), which, they assert, requires "inferring from the pled facts that the issues cited in the Kanto Report and the issues giving rise to Dr. Nazaire's probation were constitutional – or at least more than negligent – in nature." (Doc. 51 at 7). They argue that Count Eight also requires "inferring that the inmate deaths cited in the Complaint were not just wrongful, but constitutionally infirm and due to some act or omission of Dr. Nazaire. These are inferences of facts that should have been directly pled." (*Id.* (footnote omitted)).

Like the arguments presented by the Arrendale Nurses, those presented by the State Defendant Supervisors are better left until after the close of discovery. The Court may properly infer at this stage of the proceedings, under the *Twombly-Iqbal* pleading standard, *see, e.g., Bryson*, 534 F.3d at 1286, that Plaintiffs cited the Kanto Report because the conditions that led to its creation, and that are described in it, existed at the time of Molli's detention 18 months earlier, and those conditions did

11

not pass constitutional muster. The Court may also properly infer that the Plaintiffs' allegations regarding the multiple deaths of female inmates under the care of Dr. Nazaire were intended to show that his care was constitutionally infirm, and the Court may then properly conclude that those allegations do state a plausible claim against Dr. Nazaire's supervisors. For the same reason that the Court overruled the Arrendale Nurses' objections, the Court **OVERRULES** the objections of the State Defendant Supervisors.

### III.   <u>Dr. Nichols' Objections</u>

In his objections, Dr. Nichols rehearses the same arguments he made in support of his motion to dismiss, namely, that the facts upon which Plaintiffs rely to support their claims against him — "(1) the disproportionate number of GDC physicians who have received medical board discipline; (2) the Kanto report regarding 'systematic issues' and 'material weaknesses' in the healthcare for female GDC inmates; and (3) the number of female GDC inmates, 'at least 15' who 'died in custody while under Dr. Nazaire's care' " — are insufficient to state a plausible claim for relief. (Doc. 52 at 1-2 *et seq.*). Dr. Nichols argues: "The Kanto report does not establish or suggest the existence of unconstitutional conditions in 2014, when [Molli's] incident occurred.   In fact, the Kanto report does not suggest

12

unconstitutional conditions in 2015, when it was issued." (*Id.* at 7). Dr. Nichols also

argues that because he requested the Kanto Report and fired Dr. Nazaire two months

before the report was released, it is plausible that he was attempting to correct the

deficiencies in women's healthcare at GDC prisons, not that he was deliberately

indifferent to those deficiencies. (*Id.* at 8-9). He argues further that because

Plaintiffs' complaint "does not specify how any of the fifteen inmates died, it would

be an equally plausible inference that they died from a cause unrelated to medical

care." (*Id.* at 11).

As noted above, the Court may properly infer from Plaintiffs' stated factual

allegations the "necessary unarticulated assumptions" underlying those allegations,

*see Bryson*, 534 F.3d at 1286 — i.e., the very facts Dr. Nichols argues are necessary

to render Plaintiffs' claims against him plausible, and whose absence in Plaintiffs'

complaint, he argues, requires dismissal of those claims. For the reasons outlined

above, Dr. Nichols' argument is unavailing, and just as for the other objecting

Defendants, Dr. Nichols' objections are **OVERRULED**.

## IV.    Conclusion

In sum, the Court **OVERRULES** all of the Defendants' objections. (Docs. 51,

52). Finding no error, plain or otherwise, in the remainder of the Magistrate Judge's

13

Report and Recommendation (Doc. 49), the Court **ADOPTS** the Report in full.

The Court therefore **ORDERS** the following:

1.   Plaintiffs' Consent Motion To Dismiss Defendants (Doc. 43) is **GRANTED**, and the following Defendants — Kathy Seabolt, Danny Finn, Elizabeth Gee, Patrick Arnold, Chelsea Goss, Justin Grizzle, Wayman Jackson, Steven Lewicki, Crystal Tyler, and Michael Robinson — are **DISMISSED**;

2.   Defendant Crystal Tyler's Motion For Judgment On The Pleadings (Doc. 37) is **DISMISSED AS MOOT**;

3.   Defendant Amber Stone's Motion For Judgment On The Pleadings (Doc. 39) is **GRANTED**, and Defendant Stone is **DISMISSED**;

4.   Defendant Robert Prather is **DISMISSED** based on the Plaintiffs' failure to respond to the suggestion on the record of Prather's death (*see* Doc. 6);

5.   the State Defendants' Motion For Judgment On The Pleadings (Doc. 32) is **GRANTED IN PART**, and Defendants Brian Owens, Alaba Adeshigbin and Angela Grant are **DISMISSED**; and the remainder of the State Defendants' Motion — seeking the dismissal of Daniel Weise, Hannah Fuller, Page Elliott, Karla Sue Kiefer, Kristi Addison, Yhana Whitworth, Dr. Sharon Lewis, Dr. Edward Bailey and Betty Rodgers — is **DENIED**;

6.   Defendant Dr. Billy Nichols' Motion To Dismiss (Doc. 41) is **DENIED**.

**IT IS SO ORDERED** this *13*th day of *March*, 2017.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

14